## UNITED STATES *v.* GOODWIN

No. 80–2195.   Argued April 21, 1982—Decided June 18, 1982

STEVENS, J., delivered the opinion of the Court, in which BURGER, C. J., and WHITE, POWELL, REHNQUIST, and O'CONNOR, JJ., joined. BLACKMUN, J., filed an opinion concurring in the judgment, *post*, at 385. BRENNAN, J., filed a dissenting opinion, in which MARSHALL, J., joined, *post*, at 386.

*Deputy Solicitor General Frey* argued the cause for the United States. With him on the briefs were *Solicitor General Lee, Assistant Attorney General Jensen, Deputy Solicitor General Shapiro,* and *Robert J. Erickson.*

*Paul W. Spence,* by appointment of the Court, 454 U. S. 1138, argued the cause and filed a brief for respondent.

JUSTICE STEVENS delivered the opinion of the Court.

This case involves presumptions. The question presented is whether a presumption that has been used to evaluate a judicial or prosecutorial response to a criminal defendant's exercise of a right to be retried after he has been convicted

should also be applied to evaluate a prosecutor's pretrial response to a defendant's demand for a jury trial.

After the respondent requested a trial by jury on pending misdemeanor charges, he was indicted and convicted on a felony charge. Believing that the sequence of events gave rise to an impermissible appearance of prosecutorial retaliation against the defendant's exercise of his right to be tried by jury, the United States Court of Appeals for the Fourth Circuit reversed the felony conviction. 637 F. 2d 250. Because this case presents an important question concerning the scope of our holdings in *North Carolina* v. *Pearce*, 395 U. S. 711, and *Blackledge* v. *Perry*, 417 U. S. 21, we granted the Government's petition for certiorari. 454 U. S. 1079.

I

Respondent Goodwin was stopped for speeding by a United States Park Policeman on the Baltimore-Washington Parkway. Goodwin emerged from his car to talk to the policeman. After a brief discussion, the officer noticed a clear plastic bag underneath the armrest next to the driver's seat of Goodwin's car. The officer asked Goodwin to return to his car and to raise the armrest. Respondent did so, but as he raised the armrest he placed the car into gear and accelerated rapidly. The car struck the officer, knocking him first onto the back of the car and then onto the highway. The policeman returned to his car, but Goodwin eluded him in a high-speed chase.

The following day, the officer filed a complaint in the District Court charging respondent with several misdemeanor and petty offenses, including assault. Goodwin was arrested and arraigned before a United States Magistrate. The Magistrate set a date for trial, but respondent fled the jurisdiction. Three years later Goodwin was found in custody in Virginia and was returned to Maryland.

Upon his return, respondent's case was assigned to an attorney from the Department of Justice, who was detailed

temporarily to try petty crime and misdemeanor cases before the Magistrate. The attorney did not have authority to try felony cases or to seek indictments from the grand jury. Respondent initiated plea negotiations with the prosecutor, but later advised the Government that he did not wish to plead guilty and desired a trial by jury in the District Court.[1]

The case was transferred to the District Court and responsibility for the prosecution was assumed by an Assistant United States Attorney. Approximately six weeks later, after reviewing the case and discussing it with several parties, the prosecutor obtained a four-count indictment charging respondent with one felony count of forcibly assaulting a federal officer and three related counts arising from the same incident.[2] A jury convicted respondent on the felony count and on one misdemeanor count.

Respondent moved to set aside the verdict on the ground of prosecutorial vindictiveness, contending that the indictment on the felony charge gave rise to an impermissible appearance of retaliation. The District Court denied the motion, finding that "the prosecutor in this case has adequately dispelled any appearance of retaliatory intent."[3]

---

[1] At that time, there was no statutory provision allowing a trial by jury before a magistrate.

[2] By affidavit, the Assistant United States Attorney later set forth his reasons for this action: (1) he considered respondent's conduct on the date in question to be a serious violation of law, (2) respondent had a lengthy history of violent crime, (3) the prosecutor considered respondent's conduct to be related to major narcotics transactions, (4) the prosecutor believed that respondent had committed perjury at his preliminary hearing, and (5) respondent had failed to appear for trial as originally scheduled. The Government attorney stated that his decision to seek a felony indictment was not motivated in any way by Goodwin's request for a jury trial in District Court.

[3] App. to Pet. for Cert. 22a; cf. n. 2, *supra*. The District Court considered the merits of respondent's motion even though it was not timely filed in accordance with Rule 12(b)(1) of the Federal Rules of Criminal Procedure. The District Court found sufficient "cause" for respondent's procedural default pursuant to Federal Rule of Criminal Procedure 12(f). The

Although the Court of Appeals readily concluded that "the prosecutor did not act with actual vindictiveness in seeking a felony indictment," 637 F. 2d, at 252, it nevertheless reversed. Relying on our decisions in *North Carolina* v. *Pearce, supra,* and *Blackledge* v. *Perry, supra,* the court held that the Due Process Clause of the Fifth Amendment prohibits the Government from bringing more serious charges against a defendant after he has invoked his right to a jury trial, unless the prosecutor comes forward with objective evidence to show that the increased charges could not have been brought before the defendant exercised his rights. Because the court believed that the circumstances surrounding the felony indictment gave rise to a genuine risk of retaliation, it adopted a legal presumption designed to spare courts the "unseemly task" of probing the actual motives of the prosecutor. 637 F. 2d, at 255.

## II

To punish a person because he has done what the law plainly allows him to do is a due process violation "of the most basic sort." *Bordenkircher* v. *Hayes,* 434 U. S. 357, 363. In a series of cases beginning with *North Carolina* v. *Pearce* and culminating in *Bordenkircher* v. *Hayes,* the Court has recognized this basic—and itself uncontroversial—principle. For while an individual certainly may be penalized for violating the law, he just as certainly may not be punished for exercising a protected statutory or constitutional right.[4]

The imposition of punishment is the very purpose of virtually all criminal proceedings. The presence of a punitive

---

Court of Appeals did not consider the propriety of the District Court's ruling in this regard and neither do we.

[4] "[F]or an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is 'patently unconstitutional.'" *Bordenkircher* v. *Hayes,* 434 U. S. 357, 363 (quoting *Chaffin* v. *Stynchcombe,* 412 U. S. 17, 32–33, n. 20).

motivation, therefore, does not provide an adequate basis for distinguishing governmental action that is fully justified as a legitimate response to perceived criminal conduct from governmental action that is an impermissible response to non-criminal, protected activity. Motives are complex and difficult to prove. As a result, in certain cases in which action detrimental to the defendant has been taken after the exercise of a legal right, the Court has found it necessary to "presume" an improper vindictive motive. Given the severity of such a presumption, however—which may operate in the absence of any proof of an improper motive and thus may block a legitimate response to criminal conduct—the Court has done so only in cases in which a reasonable likelihood of vindictiveness exists.

In *North Carolina* v. *Pearce*, the Court held that neither the Double Jeopardy Clause nor the Equal Protection Clause prohibits a trial judge from imposing a harsher sentence on retrial after a criminal defendant successfully attacks an initial conviction on appeal. The Court stated, however, that "[i]t can hardly be doubted that it would be a flagrant violation [of the Due Process Clause] of the Fourteenth Amendment for a state trial court to follow an announced practice of imposing a heavier sentence upon every reconvicted defendant for the explicit purpose of punishing the defendant for his having succeeded in getting his original conviction set aside." 395 U. S., at 723–724. The Court continued:

> "Due process of law, then, requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory

motivation on the part of the sentencing judge." *Id.*, at 725.

In order to assure the absence of such a motivation, the Court concluded:

> "[W]henever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal." *Id.*, at 726.

In sum, the Court applied a presumption of vindictiveness, which may be overcome only by objective information in the record justifying the increased sentence.[5]

---

[5] Two subsequent cases developed the principles set forth in *Pearce*. In *Colten* v. *Kentucky*, 407 U. S. 104, the Court refused to apply the prophylactic rule of *Pearce* to an allegation of vindictiveness that arose in a case involving Kentucky's two-tier system for adjudicating less serious criminal charges. In that system, a defendant who is convicted and sentenced in an inferior court is entitled to a trial *de novo* in a court of general jurisdiction. The defendant in *Colten* exercised that right and received a more severe sentence from the court of general jurisdiction. This Court found that "[t]he possibility of vindictiveness, found to exist in *Pearce*, is not inherent in the Kentucky two-tier system." 407 U. S., at 116. The Court emphasized that the second trial was conducted, and the final sentence was imposed, by a different court that was not asked "to do over what it thought it had already done correctly." *Id.*, at 117. The Court noted: "It may often be that the superior court will impose a punishment more severe than that received from an inferior court. But it no more follows that such a sentence is a vindictive penalty for seeking a superior court trial than that the inferior court imposed a lenient penalty." *Ibid.* Ultimately, the Court described the sentence received from the inferior tribunal as "in effect . . . no more than an offer in settlement." *Id.*, at 119.

In *Chaffin* v. *Stynchcombe*, 412 U. S. 17, the Court held that the prophylactic rule of *Pearce* does not apply when the second sentence is im-

In *Blackledge* v. *Perry*, 417 U. S. 21, the Court confronted the problem of increased punishment upon retrial after appeal in a setting different from that considered in *Pearce*. Perry was convicted of assault in an inferior court having exclusive jurisdiction for the trial of misdemeanors. The court imposed a 6-month sentence. Under North Carolina law, Perry had an absolute right to a trial *de novo* in the Superior Court, which possessed felony jurisdiction. After Perry filed his notice of appeal, the prosecutor obtained a felony indictment charging him with assault with a deadly weapon. Perry pleaded guilty to the felony and was sentenced to a term of five to seven years in prison.

In reviewing Perry's felony conviction and increased sentence,[6] this Court first stated the essence of the holdings in *Pearce* and the cases that had followed it:

> "The lesson that emerges from *Pearce, Colten,* and *Chaffin* is that the Due Process Clause is not offended by all possibilities of increased punishment upon retrial after appeal, but only by those that pose a realistic likelihood of 'vindictiveness.'" 417 U. S., at 27.

The Court held that the opportunities for vindictiveness in the situation before it were such "as to impel the conclusion that due process of law requires a rule analogous to that of the *Pearce* case." *Ibid.* It explained:

---

posed on retrial by a jury. The Court emphasized that the decision in *Pearce* "was premised on the apparent need to guard against *vindictiveness* in the resentencing process." 412 U. S., at 25 (emphasis in original). The Court found that the possibility of vindictiveness was *de minimis* when resentencing was by jury in a properly controlled retrial. The Court noted that (1) the jury typically will not be aware of the prior sentence, (2) the jury, unlike a judge who has been reversed, will have no personal stake in the prior conviction and no motivation to engage in self-vindication, and (3) the jury will not likely be sensitive to the institutional interests that might occasion higher sentences by a judge desirous of discouraging what he regards as meritless appeals. *Id.*, at 26–27.

[6] The Court held that in pleading guilty Perry had not waived the right "not to be haled into court at all upon the felony charge." 417 U. S., at 30.

"A prosecutor clearly has a considerable stake in discouraging convicted misdemeanants from appealing and thus obtaining a trial *de novo* in the Superior Court, since such an appeal will clearly require increased expenditures of prosecutorial resources before the defendant's conviction becomes final, and may even result in a formerly convicted defendant's going free. And, if the prosecutor has the means readily at hand to discourage such appeals—by 'upping the ante' through a felony indictment whenever a convicted misdemeanant pursues his statutory appellate remedy—the State can insure that only the most hardy defendants will brave the hazards of a *de novo* trial." *Id.*, at 27–28.

The Court emphasized in *Blackledge* that it did not matter that no evidence was present that the prosecutor had acted in bad faith or with malice in seeking the felony indictment.[7] As in *Pearce*, the Court held that the likelihood of vindictiveness justified a presumption that would free defendants of apprehension of such a retaliatory motivation on the part of the prosecutor.[8]

Both *Pearce* and *Blackledge* involved the defendant's exercise of a procedural right that caused a complete retrial after he had been once tried and convicted. The decisions in these cases reflect a recognition by the Court of the institutional bias inherent in the judicial system against the retrial of issues that have already been decided. The doctrines of *stare decisis*, res judicata, the law of the case, and double jeopardy all are based, at least in part, on that deep-seated bias.

---

[7] "There is, of course, no evidence that the prosecutor in this case acted in bad faith or maliciously in seeking a felony indictment against Perry." *Id.*, at 28.

[8] The presumption again could be overcome by objective evidence justifying the prosecutor's action. The Court noted: "This would clearly be a different case if the State had shown that it was impossible to proceed on the more serious charge at the outset, as in *Diaz* v. *United States*, 223 U. S. 442." *Id.*, at 29, n. 7.

While none of these doctrines barred the retrials in *Pearce* and *Blackledge*, the same institutional pressure that supports them might also subconsciously motivate a vindictive prosecutorial or judicial response to a defendant's exercise of his right to obtain a retrial of a decided question.

In *Bordenkircher* v. *Hayes*, 434 U. S. 357, the Court for the first time considered an allegation of vindictiveness that arose in a pretrial setting. In that case the Court held that the Due Process Clause of the Fourteenth Amendment did not prohibit a prosecutor from carrying out a threat, made during plea negotiations, to bring additional charges against an accused who refused to plead guilty to the offense with which he was originally charged. The prosecutor in that case had explicitly told the defendant that if he did not plead guilty and "save the court the inconvenience and necessity of a trial" he would return to the grand jury to obtain an additional charge that would significantly increase the defendant's potential punishment.[9] The defendant refused to plead guilty and the prosecutor obtained the indictment. It was not disputed that the additional charge was justified by the evidence, that the prosecutor was in possession of this evidence at the time the original indictment was obtained, and that the prosecutor sought the additional charge because of the accused's refusal to plead guilty to the original charge.

In finding no due process violation, the Court in *Bordenkircher* considered the decisions in *Pearce* and *Blackledge*, and stated:

> "In those cases the Court was dealing with the State's unilateral imposition of a penalty upon a defendant who had chosen to exercise a legal right to attack his original conviction—a situation 'very different from the give-and-

---

[9] The prosecutor advised the defendant that he would obtain an indictment under the Kentucky Habitual Criminal Act, which would subject the accused to a mandatory sentence of life imprisonment by reason of his two prior felony convictions. Absent the additional indictment, the defendant was subject to a punishment of 2 to 10 years in prison.

take negotiation common in plea bargaining between the prosecution and defense, which arguably possess relatively equal bargaining power.' *Parker* v. *North Carolina*, 397 U. S. 790, 809 (opinion of BRENNAN, J.)." 434 U. S., at 362.

The Court stated that the due process violation in *Pearce* and *Blackledge* "lay not in the possibility that a defendant might be deterred from the exercise of a legal right . . . but rather in the danger that the State might be retaliating against the accused for lawfully attacking his conviction." 434 U. S., at 363.

The Court held, however, that there was no such element of punishment in the "give-and-take" of plea negotiation, so long as the accused "is free to accept or reject the prosecution's offer." *Ibid.* The Court noted that, by tolerating and encouraging the negotiation of pleas, this Court had accepted as constitutionally legitimate the simple reality that the prosecutor's interest at the bargaining table is to persuade the defendant to forgo his constitutional right to stand trial. The Court concluded:

> "We hold only that the course of conduct engaged in by the prosecutor in this case, which no more than openly presented the defendant with the unpleasant alternatives of forgoing trial or facing charges on which he was plainly subject to prosecution, did not violate the Due Process Clause of the Fourteenth Amendment." *Id.*, at 365.

The outcome in *Bordenkircher* was mandated by this Court's acceptance of plea negotiation as a legitimate process.[10] In declining to apply a presumption of vindictiveness,

---

[10] Cf. 434 U. S., at 364–365 ("To hold that the prosecutor's desire to induce a guilty plea . . . may play no part in his charging decision, would contradict the very premises that underlie the concept of plea bargaining itself"). If a prosecutor could not threaten to bring additional charges dur-

the Court recognized that "additional" charges obtained by a prosecutor could not necessarily be characterized as an impermissible "penalty." Since charges brought in an original indictment may be abandoned by the prosecutor in the course of plea negotiation—in often what is clearly a "benefit" to the defendant—changes in the charging decision that occur in the

---

ing plea negotiation, and then obtain those charges when plea negotiation failed, an equally compelling argument could be made that a prosecutor's initial charging decision could never be influenced by what he hoped to gain in the course of plea negotiation. Whether "additional" charges were brought originally and dismissed, or merely threatened during plea negotiations, the prosecutor could be accused of using those charges to induce a defendant to forgo his right to stand trial. If such use of "additional" charges were presumptively invalid, the institution of plea negotiation could not survive. Thus, to preserve the plea negotiation process, with its correspondent advantages for both the defendant and the State, the Court in *Bordenkircher* held that "additional" charges *may* be used to induce a defendant to plead guilty. Once that conclusion was accepted, it necessarily followed that it did not matter whether the "additional" charges were obtained in the original indictment or merely threatened in plea negotiations and obtained once those negotiations broke down. In the former situation, the prosecutor could be said simply to have "anticipated" that the defendant might refuse to plead guilty and, as a result, to have placed his "threat" in the original indictment. Cf. *id.*, at 360–361 ("As a practical matter, in short, this case would be no different if the grand jury had indicted Hayes as a recidivist from the outset, and the prosecutor had offered to drop that charge as part of the plea bargain").

The decision in *Bordenkircher* also was influenced by the fact that, had the Court recognized a distinction of constitutional dimension between the dismissal of charges brought in an original indictment and the addition of charges after plea negotiation, the aggressive prosecutor would merely be prompted "to bring the greater charge initially in every case, and only thereafter to bargain." *Id.*, at 368 (BLACKMUN, J., dissenting). The consequences of such a decision often would be prejudicial to defendants, for an accused "would bargain against a greater charge, face the likelihood of increased bail, and run the risk that the court would be less inclined to accept a bargained plea." *Ibid.* Moreover, in those cases in which a defendant accepted the prosecution's offer, his reputation would be spared the unnecessary damage that would result from the placement of the additional charge on the public record.

context of plea negotiation are an inaccurate measure of improper prosecutorial "vindictiveness."[11]   An initial indictment—from which the prosecutor embarks on a course of plea negotiation—does not necessarily define the extent of the legitimate interest in prosecution.   For just as a prosecutor may forgo legitimate charges already brought in an effort to save the time and expense of trial, a prosecutor may file additional charges if an initial expectation that a defendant would plead guilty to lesser charges proves unfounded.[12]

## III

This case, like *Bordenkircher*, arises from a pretrial decision to modify the charges against the defendant.   Unlike *Bordenkircher*, however, there is no evidence in this case that could give rise to a claim of *actual* vindictiveness; the

---

[11] The Court in *Bordenkircher* stated that the validity of a pretrial charging decision must be measured against the broad discretion held by the prosecutor to select the charges against an accused.   "Within the limits set by the legislature's constitutionally valid definition of chargeable offenses, 'the conscious exercise of some selectivity in enforcement is not itself a federal constitutional violation' so long as 'the selection was [not] deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification.'"   *Id.*, at 364 (quoting *Oyler* v. *Boles*, 368 U. S. 448, 456).   A charging decision does not levy an improper "penalty" unless it results solely from the defendant's exercise of a protected legal right, rather than the prosecutor's normal assessment of the societal interest in prosecution.   See Westen & Westin, A Constitutional Law of Remedies for Broken Plea Bargains, 66 Calif. L. Rev. 471, 486 (1978).

[12] In rejecting a presumption of vindictiveness, the Court in *Bordenkircher* did not foreclose the possibility that a defendant might prove through objective evidence an improper prosecutorial motive.   In the case before it, however, the Court did not find such proof in the fact that the prosecutor had stated explicitly that additional charges were brought to persuade the defendant to plead guilty.   The fact that the prosecutor threatened the defendant did not prove that the action threatened was not permissible; the prosecutor's conduct did not establish that the additional charges were brought solely to "penalize" the defendant and could not be justified as a proper exercise of prosecutorial discretion.

prosecutor never suggested that the charge was brought to influence the respondent's conduct.[13] The conviction in this case may be reversed only if a *presumption* of vindictiveness—applicable in all cases—is warranted.

There is good reason to be cautious before adopting an inflexible presumption of prosecutorial vindictiveness in a pretrial setting. In the course of preparing a case for trial, the prosecutor may uncover additional information that suggests a basis for further prosecution or he simply may come to realize that information possessed by the State has a broader significance. At this stage of the proceedings, the prosecutor's assessment of the proper extent of prosecution may not have crystallized. In contrast, once a trial begins—and certainly by the time a conviction has been obtained—it is much more likely that the State has discovered and assessed all of the information against an accused and has made a determination, on the basis of that information, of the extent to which he should be prosecuted. Thus, a change in the charging decision made after an initial trial is completed is much more likely to be improperly motivated than is a pretrial decision.

In addition, a defendant before trial is expected to invoke procedural rights that inevitably impose some "burden" on the prosecutor. Defense counsel routinely file pretrial motions to suppress evidence; to challenge the sufficiency and form of an indictment; to plead an affirmative defense; to request psychiatric services; to obtain access to government files; to be tried by jury. It is unrealistic to assume that a prosecutor's probable response to such motions is to seek to penalize and to deter. The invocation of procedural rights is an integral part of the adversary process in which our criminal justice system operates.

Thus, the timing of the prosecutor's action in this case suggests that a presumption of vindictiveness is not warranted.

---

[13] See n. 12, *supra.*

A prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution. An initial decision should not freeze future conduct.[14] As we made clear in *Bordenkircher*, the initial charges filed by a prosecutor may not reflect the extent to which an individual is legitimately subject to prosecution.[15]

The nature of the right asserted by the respondent confirms that a presumption of vindictiveness is not warranted in this case. After initially expressing an interest in plea negotiation, respondent decided not to plead guilty and requested a trial by jury in District Court. In doing so, he forced the Government to bear the burdens and uncertainty of a trial. This Court in *Bordenkircher* made clear that the mere fact that a defendant refuses to plead guilty and forces the government to prove its case is insufficient to warrant a presumption that subsequent changes in the charging deci-

---

[14] We recognize that prosecutors may be trained to bring all legitimate charges against an individual at the outset. Certainly, a prosecutor should not file any charge until he has investigated fully all of the circumstances surrounding a case. To presume that every case is complete at the time an initial charge is filed, however, is to presume that every prosecutor is infallible—an assumption that would ignore the practical restraints imposed by often limited prosecutorial resources. Moreover, there are certain advantages in avoiding a rule that would compel prosecutors to attempt to place every conceivable charge against an individual on the public record from the outset. See n. 10, *supra*.

[15] Respondent argues that the Court's refusal to presume vindictiveness in *Bordenkircher* is not controlling in this case because he had refused to plead guilty and the plea negotiation process was over. Respondent's argument is not strengthened, however, by the fact that the additional charge in this case was brought outside the context of plea negotiation. The fact that the increased charge in *Bordenkircher* was brought after a "warning" made during plea negotiation was the principal basis for the defendant's claim that the charge was an unjustified response to his legal right to stand trial. But cf. n. 12, *supra*. Respondent's argument in this case has no such predicate; unlike the defendant in *Bordenkircher*, the only evidence respondent is able to marshal in support of his allegation of vindictiveness is that the additional charge was brought at a point in time after his exercise of a protected legal right.

sion are unjustified. Respondent argues that such a presumption is warranted in this case, however, because he not only requested a trial—he requested a trial by jury.

We cannot agree. The distinction between a bench trial and a jury trial does not compel a special presumption of prosecutorial vindictiveness whenever additional charges are brought after a jury is demanded. To be sure, a jury trial is more burdensome than a bench trial. The defendant may challenge the selection of the venire; the jury itself must be impaneled; witnesses and arguments must be prepared more carefully to avoid the danger of a mistrial. These matters are much less significant, however, than the facts that before either a jury or a judge the State must present its full case against the accused and the defendant is entitled to offer a full defense. As compared to the complete trial *de novo* at issue in *Blackledge*, a jury trial—as opposed to a bench trial—does not require duplicative expenditures of prosecutorial resources before a final judgment may be obtained. Moreover, unlike the trial judge in *Pearce*, no party is asked "to do over what it thought it had already done correctly."[16] A prosecutor has no "personal stake" in a bench trial and thus no reason to engage in "self-vindication" upon a defendant's request for a jury trial.[17] Perhaps most importantly, the institutional bias against the retrial of a decided question that supported the decisions in *Pearce* and *Blackledge* simply has no counterpart in this case.[18]

---

[16] Cf. *Colten* v. *Kentucky*, 407 U. S., at 117.

[17] Cf. *Chaffin* v. *Stynchcombe*, 412 U. S., at 27.

[18] Indeed, there is a strong tradition in this country in favor of jury trials, despite the additional burdens that they entail for all parties. In many cases—and for many reasons—both the judge and the prosecutor may prefer to have a case tried by jury. See, *e. g.*, *Vines* v. *Muncy*, 553 F. 2d 342 (CA4 1977); *United States* v. *Morlang*, 531 F. 2d 183 (CA4 1975); *United States* v. *Ceja*, 451 F. 2d 399 (CA1 1971); see also Fed. Rule Crim. Proc. 23(a). In *Singer* v. *United States*, 380 U. S. 24, this Court held that a criminal defendant does not have a constitutional right to waive a jury trial and to have his case tried before a judge alone. The Court stated: "Trial by jury has been established by the Constitution as the 'normal and . . .

There is an opportunity for vindictiveness, as there was in *Colten* and *Chaffin*. Those cases demonstrate, however, that a mere opportunity for vindictiveness is insufficient to justify the imposition of a prophylactic rule. As *Blackledge* makes clear, "the Due Process Clause is not offended by all possibilities of increased punishment . . . but only by those that pose a realistic likelihood of 'vindictiveness.'" 417 U. S., at 27. The possibility that a prosecutor would respond to a defendant's pretrial demand for a jury trial by bringing charges not in the public interest that could be explained only as a penalty imposed on the defendant is so *unlikely* that a presumption of vindictiveness certainly is not warranted.

## IV

In declining to apply a presumption of vindictiveness, we of course do not foreclose the possibility that a defendant in an appropriate case might prove objectively that the prosecutor's charging decision was motivated by a desire to punish him for doing something that the law plainly allowed him to do.[19] In this case, however, the Court of Appeals stated: "On this record we readily conclude that the prosecutor did not act with actual vindictiveness in seeking a felony indictment." 637 F. 2d, at 252. Respondent does not challenge that finding. Absent a presumption of vindictiveness, no due process violation has been established.

The judgment of the Court of Appeals is reversed. The

---

preferable mode of disposing of issues of fact in criminal cases.' *Patton* v. *United States*, 281 U. S. 276, 312." *Id.*, at 35.

[19] As the Government states in its brief:

"Accordingly, while the prosecutor's charging decision is presumptively lawful, and the prosecutor is not required to sustain any burden of justification for an increase in charges, the defendant is free to tender evidence to the court to support a claim that enhanced charges are a direct and unjustifiable penalty for the exercise of a procedural right. Of course, only in a rare case would a defendant be able to overcome the presumptive validity of the prosecutor's actions through such a demonstration." Brief for United States 28, n. 9.

case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE BLACKMUN, concurring in the judgment.

Like JUSTICE BRENNAN, I believe that our precedents mandate the conclusion that "a realistic likelihood of 'vindictiveness'" arises in this context. *Blackledge* v. *Perry*, 417 U. S. 21, 27 (1974). The Assistant United States Attorney responsible for increasing the charges against respondent was aware of the initial charging decision; he had the means available to discourage respondent from electing a jury trial in District Court; he had a substantial stake in dissuading respondent from exercising that option; and he was familiar with, and sensitive to, the institutional interests that favored a trial before the Magistrate.

Moreover, I find no support in our prior cases for any distinction between pretrial and post-trial vindictiveness. As I have said before: "Prosecutorial vindictiveness in any context is still prosecutorial vindictiveness. The Due Process Clause should protect an accused against it, however it asserts itself." *Bordenkircher* v. *Hayes*, 434 U. S. 357, 368 (1978) (dissenting opinion). And, as JUSTICE BRENNAN points out, *Bordenkircher* does not dictate the result here. In fact, in *Bordenkircher* the Court expressly distinguished and left *unresolved* cases such as this one, "where the prosecutor without notice brought an additional and more serious charge after plea negotiations relating only to the original [charges] had ended with the defendant's insistence on pleading not guilty." *Id.*, at 360.

The Court's ruling in *Bordenkircher* did not depend on a distinction between the pretrial and post-trial settings: rather, the Court declined to apply its prior opinions in *Blackledge* and *North Carolina* v. *Pearce*, 395 U. S. 711 (1969), because those cases involved "the State's unilateral imposition of a penalty," rather than "'the give-and-take negotiation common in plea bargaining.'" 434 U. S., at

362, quoting *Parker* v. *North Carolina*, 397 U. S. 790, 809 (1970) (opinion of BRENNAN, J.). Here, as in *Pearce* and *Blackledge*, the prosecutor unilaterally imposed a penalty in response to respondent's exercise of a legal right.

Adopting the prophylactic rule of *Pearce* and *Blackledge* in this case will not, as the Court would insist, undercut "the broad discretion entrusted to [the prosecutor] to determine the extent of the societal interest in prosecution." *Ante*, at 382. "[T]he prosecutor initially 'makes a discretionary determination that the interests of the state are served by not seeking more serious charges.'" *Bordenkircher* v. *Hayes*, 434 U. S., at 367 (dissenting opinion), quoting *Hayes* v. *Cowan*, 547 F. 2d 42, 44 (CA6 1976). Moreover, the Due Process Clause does not deprive a prosecutor of the flexibility to add charges after a defendant has decided not to plead guilty and has elected a jury trial in District Court—so long as the adjustment is based on "objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original" charging decision. *North Carolina* v. *Pearce*, 395 U. S., at 726. In addition, I believe that the prosecutor adequately explains an increased charge by pointing to objective information that he could not reasonably have been aware of at the time charges were initially filed. Cf. *ante*, at 381.

Because I find that the Assistant United States Attorney's explanation for seeking a felony indictment satisfies these standards, see *ante*, at 371, n. 2, I conclude that the Government has dispelled the appearance of vindictiveness and, therefore, that the imposition of additional charges did not violate respondent's due process rights. Accordingly, I concur in the judgment.

JUSTICE BRENNAN, with whom JUSTICE MARSHALL joins, dissenting.

In *Blackledge* v. *Perry*, 417 U. S. 21 (1974), this Court held that the Due Process Clause prohibits a prosecutor from re-

sponding to the defendant's invocation of his statutory right to a trial *de novo* by bringing more serious charges against him that arise out of the same conduct. In the case before us, the prosecutor responded to the defendant's invocation of his statutory *and constitutional* right to a trial *by jury* by raising petty offenses to felony charges based on the same conduct. Yet the Court holds, in the teeth of *Blackledge*, that here there is no denial of due process. In my view, *Blackledge* requires affirmance of the Court of Appeals, and the Court's attempt to distinguish that case from the present one is completely unpersuasive.

The salient facts of this case are quite simple. Respondent was originally charged with several petty offenses and misdemeanors—speeding, reckless driving, failing to give aid at the scene of an accident, fleeing from a police officer, and assault by striking a police officer—arising from his conduct on the Baltimore-Washington Parkway. Assuming that respondent had been convicted on every count charged in this original complaint, the maximum punishment to which he conceivably could have been exposed was fines of $3,500 and 28 months in prison.[1] Because all of the charges against respondent were petty offenses or misdemeanors, they were scheduled for trial before a magistrate, see 28 U. S. C. § 636(a)(3); 18 U. S. C. § 3401(a), who was not authorized to

---

[1] Two counts of "speeding" and one count of "reckless driving," in violation of 36 CFR §§ 50.31, 50.32 (1981), are each punishable by fines of not more than $500, or imprisonment for not more than six months, or both, 36 CFR § 50.5(a) (1981). One count of "failing to give aid at the scene of an accident," in violation of 18 U. S. C. §§ 7, 13, Md. Transp. Code Ann. §§ 20–102, 20–104 (1977), is punishable by a fine of not more than $1,000, or imprisonment for not more than four months, or both, §§ 27–101(c)(12), (14). One count of "fleeing from a police officer," in violation of 18 U. S. C. §§ 7, 13, Md. Transp. Code Ann. § 21–904 (1977), is punishable by a fine of not more than $500, § 27–101(b). One count of "assault by striking" a police officer, in violation of 18 U. S. C. § 113(d), is punishable by a fine of not more than $500, or imprisonment for not more than six months, or both.

conduct jury trials, see *ante,* at 371, n. 1. In addition, the case was assigned to a prosecutor who, owing to inexperience, was not even authorized to try felony cases. Thus the Government recognized that respondent's alleged crimes were relatively minor, and attempted to dispose of them in an expedited manner. But respondent frustrated this attempt at summary justice by demanding a jury trial in Federal District Court. This was his right, of course, not only under the applicable statute, 18 U. S. C. § 3401(b), but also under the Constitution.[2]

Respondent's demand required that the case be transferred from the Magistrate's Court in Hyattsville to the District Court in Baltimore, and that the prosecution be reassigned to an Assistant United States Attorney, who was authorized to prosecute cases in the District Court. The new prosecutor sought and obtained a second, four-count indictment, in which the same conduct originally charged as petty-offense and misdemeanor counts was now charged as a misdemeanor and two felonies: assaulting, resisting, or impeding a federal officer with a deadly weapon, and assault with a dangerous weapon. If we assume (as before) that respondent was convicted on all of these charges, his maximum exposure to punishment had now become fines of $11,500 and 15 years in prison.[3] Respondent's claim below was that such

---

[2] See *District of Columbia* v. *Colts,* 282 U. S. 63, 73–74 (1930); *United States* v. *Hamdan,* 552 F. 2d 276, 278–280 (CA9 1977); *United States* v. *Sanchez-Meza,* 547 F. 2d 461, 464–465 (CA9 1976); *United States* v. *Potvin,* 481 F. 2d 380, 381–383 (CA10 1973).

[3] "Assaulting, resisting, or impeding" a federal officer with a deadly weapon, in violation of 18 U. S. C. § 111, is punishable by a fine of not more than $10,000, or imprisonment for not more than 10 years, or both. "Assault with a dangerous weapon," in violation of 18 U. S. C. § 113(c), is punishable by a fine of not more than $1,000, or imprisonment for not more than five years, or both. A third count in the new indictment was "fleeing from a police officer," in violation of 18 U. S. C. §§ 7, 13, Md. Transp. Code Ann. § 21–904 (1977), which is punishable by a fine of not more than $500, § 27–101(b). The fourth count of the indictment was "failure to appear," in violation of 18 U. S. C. § 3150.

an elevation of the charges against him from petty offenses to felonies, following his exercise of his statutory and constitutional right to a jury trial, reflected prosecutorial vindictiveness that denied him due process of law.

The Court attempts to denigrate respondent's claim by asserting that this case "involves presumptions," *ante*, at 369, and by arguing that "there is no evidence in this case that could give rise to a claim of *actual* vindictiveness," *ante*, at 380 (emphasis in original). By casting respondent's claim in terms of a "mere" legal presumption, the Court hopes to make that claim appear to be unreal or technical. But such an approach is contrary to the letter and spirit of *Blackledge*. There we focused upon the accused's "apprehension of . . . retaliatory motivation," 417 U. S., at 28, and we held that the Due Process Clause is violated when situations involving increased punishment "pose a realistic likelihood of 'vindictiveness,'" *id.*, at 27. In such situations, the criminal defendant's apprehension of retaliatory motivation does not amount to an unreal or technical violation of his constitutional rights. On the contrary, as we recognized in *North Carolina* v. *Pearce*, 395 U. S. 711, 725 (1969), "the fear of such vindictiveness may unconstitutionally deter a defendant's exercise" of his rights.

The Court does not contend that *Blackledge* is inapplicable to instances of pretrial as well as post-trial vindictiveness. But after examining the record before us for objective indications of such vindictiveness, the Court concludes, *ante*, at 382, that "a presumption of vindictiveness is not warranted in this case." With all respect, I disagree both with the Court's conclusion and with its reasoning. In my view, the question here is not one of "presumptions." Rather, I would analyze respondent's claim in the terms employed by our precedents. Did the elevation of the charges against respondent "pose a realistic likelihood of 'vindictiveness?'" See *Blackledge* v. *Perry*, 417 U. S., at 27. Is it possible that "the fear of such vindictiveness may unconstitutionally deter" a person in respondent's position from exercising his statutory and

constitutional right to a jury trial? See *North Carolina* v. *Pearce, supra,* at 725. The answer to these questions is plainly "Yes."

The Court suggests, *ante,* at 383, that the distinction between a bench trial and a jury trial is unimportant in this context. Such a suggestion is demonstrably fallacious. Experienced criminal practitioners, for both prosecution and defense, know that a jury trial entails far more prosecutorial work than a bench trial. Defense challenges to the potential-juror array, *voir dire* examination of potential jurors, and suppression hearings all take up a prosecutor's time before a jury trial, adding to his scheduling difficulties and caseload. More care in the preparation of his requested instructions, of his witnesses, and of his own remarks is necessary in order to avoid mistrial or reversible error. And there is always the specter of the "irrational" acquittal by a jury that is unreviewable on appeal. Thus it is simply inconceivable that a criminal defendant's election to be tried by jury would be a matter of indifference to his prosecutor. On the contrary, the prosecutor would almost always prefer that the defendant waive such a "troublesome" right. And if the defendant refuses to do so, the prosecutor's subsequent elevation of the charges against the defendant manifestly poses a realistic likelihood of vindictiveness.

The truth of my conclusion, and the patent fallacy of the Court's, is particularly evident on the record before us. The practical effect of respondent's demand for a jury trial was that the Government had to transfer the case from a trial before a Magistrate in Hyattsville to a trial before a District Judge and jury in Baltimore, and had to substitute one prosecutor for another. The Government thus suffered not only administrative inconvenience: It also lost the value of the preparation and services of the first prosecutor, and was forced to commit a second prosecutor to prepare the case from scratch. Thus, just as in *Blackledge,* respondent's elec-

tion had the effect of "clearly requir[ing] increased expenditures of prosecutorial resources before the defendant's conviction" could finally be achieved. 417 U. S., at 27. And, to paraphrase *Blackledge*,

> "if the prosecutor has the means readily at hand to discourage such [elections]—by 'upping the ante' through a felony indictment . . . —the State can insure that only the most hardy defendants will brave the hazards of a [jury] trial." Cf. *id.*, at 27–28.

I conclude that the facts of this case easily support the inference of "a realistic likelihood of vindictiveness."

The Court discusses *Bordenkircher* v. *Hayes*, 434 U. S. 357 (1978), *ante*, at 377–380, and suggests some analogy between that case and the present one, *ante*, at 380. In my view, such an analogy is quite inapt. *Bordenkircher* dealt only with the context of plea bargaining and with the narrow situation in which the prosecutor "openly presented the defendant with the unpleasant alternatives of forgoing trial or facing [increased] charges." 434 U. S., at 365. *Bordenkircher* did not remotely suggest that a pretrial increase in charges, made as a response to a demand for jury trial, would not present a realistic likelihood of vindictiveness when the demand put the prosecution to an added burden such as that imposed in this case. Indeed, *Bordenkircher* expressly distinguished its facts from those in *Blackledge* and *Pearce:* "In those cases the Court was dealing with the State's unilateral imposition of a penalty upon a defendant who had chosen to exercise a legal right . . . —a situation 'very different from the give-and-take negotiation common in plea bargaining . . . .'" 434 U. S., at 362, quoting *Parker* v. *North Carolina*, 397 U. S. 790, 809 (1970). The facts in this case plainly fit within the pattern of *Pearce* and *Blackledge*, not of *Bordenkircher*. There was no ongoing "give-and-take negotiation" between respondent and the Government, and there

*was* the "unilateral imposition of a penalty" in response to respondent's choice "to exercise a legal right."

Because it seems clear to me that *Blackledge* requires it, I would affirm the judgment of the Court of Appeals.