928 F.2d 1133
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES, Plaintiff-Appellee,
v.
Hamad HAIDAR, Defendant-Appellant.
 No. 89-2419.
 United States Court of Appeals, Sixth Circuit.
 March 26, 1991.
 
 On Appeal from the United States District Court for the Eastern District of Michigan, 89-80114, Woods, J.
 E.D.Mich.
 AFFIRMED.
 Before NATHANIEL R. JONES and DAVID A. NELSON, Circuit Judge, and MILES, Senior District Judge.*
 PER CURIAM.
 
 
 1
 The defendant in this case, Hamad Toufic Haidar, is a Lebanese national who came to this country in 1987 to attend college. On August 29, 1988, Mr. Haidar was stopped at the Detroit-Windsor tunnel as he was attempting to reenter the United States from Canada. Finding cocaine residue in his vehicle and more than two grams of cocaine on his person, United States customs officials placed Mr. Haidar under arrest. The Customs Service issued a misdemeanor ticket charging Mr. Haidar with possession of a controlled substance, and he was then released pending an appearance before a magistrate.
 
 
 2
 On October 8, 1988, four days before the date set for his appearance before the magistrate, Mr. Haidar left the United States for Lebanon. He failed to appear before the magistrate on the appointed day, and he apparently did not return to the United States until some later time. On December 21, 1988, he was arrested in Michigan on an unrelated conspiracy charge.
 
 
 3
 On February 21, 1989, Mr. Haidar was indicted by a federal grand jury on two charges relating to the Detroit-Windsor tunnel incident. Count one of the indictment alleged that on August 29, 1988, Mr. Haidar attempted to import cocaine in violation of 21 U.S.C. Secs. 952, 957, 963, and 960. Count two alleged that on October 12, 1988, he failed to appear before a U.S. magistrate in violation of 18 U.S.C. Sec. 3146(a)(1).
 
 
 4
 These charges were tried to a federal district court judge, Woods, J., who found Mr. Haidar guilty on both counts. Haidar filed a timely notice of appeal, and it is this appeal that is before us now.
 
 
 5
 On September 29, 1988--five months before the indictment in the instant case--Mr. Haidar and others were indicted for conspiracy in connection with their alleged participation in a narcotics ring. Judge Duggan, the federal district court judge who drew the conspiracy matter, granted a pretrial motion by Mr. Haidar to sever his case from that against the other defendants. (Mr. Haidar was ultimately convicted after a separate jury trial.)
 
 
 6
 It was only four days after Judge Duggan granted the motion to sever in the conspiracy case that the prosecutor in the instant case elected to seek an indictment in connection with the tunnel incident. Mr. Haidar moved to dismiss the indictment on the theory that it was infused with prosecutorial vindictiveness. Notwithstanding that he had fled the jurisdiction while the misdemeanor charge brought by the Customs Service was pending against him, Mr. Haidar argued that the U.S. Attorney's office could and should have contented itself with a misdemeanor proceeding as far as the tunnel episode was concerned. The timing of the indictment, Mr. Haidar maintained, gave rise to a presumption that the indictment had been procured because of pique over the fact that Mr. Haidar had succeeded in getting his conspiracy case severed.
 
 
 7
 Judge Woods rejected Mr. Haidar's claim of prosecutorial vindictiveness. We conclude that Judge Woods was correct in doing so, and we shall affirm the conviction.
 
 
 8
 * This court dealt with the issue of prosecutorial vindictiveness in a pretrial context in United States v. Andrews, 633 F.2d 449 (6th Cir.1980), cert. denied, 450 U.S. 927 (1981). In that case two defendants sought and were denied release on bail pending trial by a magistrate. The district court reversed the magistrate's decision, and bail was granted. Two days later the government obtained a superseding indictment charging the defendants with an additional conspiracy count. The district court concluded that the addition of the conspiracy charge was constitutionally impermissible. Id. at 451.
 
 
 9
 In remanding the case for an evidentiary hearing on the vindictiveness issue, we declared that a presumption of prosecutorial vindictiveness would arise if, "in the particular factual situation presented, there existed a 'realistic likelihood of vindictiveness' for the prosecutor's augmentation of the charges." Id. at 453. We identified two factors that must be weighed in determining whether "a realistic likelihood of vindictiveness" existed. First, we said, the court must determine the prosecutor's stake in deterring exercise of a defendant's rights. Second, we said that the court must review the prosecutor's actual conduct. Thus "[a] prosecutor who adds on extra charges after the exercise of a procedural right is arguably acting less vindictively than a prosecutor who substitutes a more severe charge for a less severe one." Id. at 454. We also noted "that the government should be given an opportunity to rebut a finding of realistic likelihood of vindictiveness." Id. at 456.
 
 
 10
 The United States Supreme Court subsequently faced a similar issue in United States v. Goodwin, 457 U.S. 368 (1982). There the defendant had been arrested and arraigned on misdemeanor charges. The defendant fled the jurisdiction and was apprehended by government agents three years later. Upon his return, the defendant engaged in plea negotiations with a government attorney who did not have authority to try felony cases. The defendant advised the government that he desired a jury trial. At this point the case was assigned to an Assistant United States Attorney who obtained an indictment on felony charges based on the same conduct that had been the subject of the earlier misdemeanor charges. Id. at 370-71.
 
 
 11
 After reviewing its previous cases, the Court concluded that "[t]he possibility that a prosecutor would respond to a defendant's pretrial demand for a jury trial by bringing charges not in the public interest that could be explained only as [a] penalty imposed on the defendant is so unlikely that a presumption of vindictiveness certainly is not warranted." Id. at 384. (The Court noted that the defendant still had the option of presenting evidence to prove, without the aid of any presumption, that the prosecutor's decision was in fact vindictive; no such evidence had been presented, however.) In discussing the presumption issue, the Court explained that:
 
 
 12
 "There is good reason to be cautious before adopting an inflexible presumption of prosecutorial vindictiveness in a pretrial setting. In the course of preparing a case for trial, the prosecutor may uncover additional information that suggests a basis for further prosecution or he simply may come to realize that information possessed by the State has a broader significance. At this stage of the proceedings, the prosecutor's assessment of the proper extent of prosecution may not have crystallized. In contrast, once a trial begins--and certainly by the time a conviction has been obtained--it is much more likely that the State has discovered and assessed all of the information against an accused and has made a determination, on the basis of that information, of the extent to which he should be prosecuted. Thus, a change in the charging decision made after an initial trial is completed is much more likely to be improperly motivated than is a pretrial decision."
 
 
 13
 Id. at 381.
 
 
 14
 Against this background, and noting that the claim of vindictiveness arises in a pretrial setting in the case at bar, we agree with the district court that Mr. Haidar failed to show a likelihood of vindictiveness sufficient to trigger a presumption on that score. It is most unlikely, in our view, that the prosecutor would have decided to seek an indictment of Mr. Haidar on felony charges simply because Haidar happened to have obtained a severance in another proceeding.
 
 
 15
 It is important to bear in mind that the indictment in question represented the first exercise of prosecutorial discretion by the U.S. Attorney's office. It was the Customs Service that had issued the misdemeanor ticket, and the Customs Service had acted before the full extent of Mr. Haidar's involvement in drug distribution was known and before he had fled the jurisdiction. We should be particularly reluctant to invoke a presumption of vindictiveness on these facts--and without the presumption, Mr. Haidar's claim of prosecutorial vindictiveness must fail. He has pointed to no evidence whatever of actual vindictiveness.
 
 
 16
 Mr. Haidar does argue that prosecutorial vindictiveness was demonstrated by the prosecutor's decision to indict separately, as opposed to adding new charges to those in the indictment that was already pending. This argument, raised for the first time on appeal, is without merit. No evidence connected the tunnel offense with the conspiracy at issue in the other case, and it does not appear that Mr. Haidar ever requested that the two cases be joined. Although the government concedes that "aspects of the 'tunnel' offense were introduced as 'similar acts' evidence in the [conspiracy] trial," this certainly does not rise to the level of a double jeopardy violation, and it does not suggest that Mr. Haidar would not have complained just as vigorously if the government had followed the course he now suggests it should have followed.
 
 II
 
 17
 In a separate pro se brief, Mr. Haidar challenges the sufficiency of the evidence presented to show that the white, powdery substance seized during the search at the tunnel was in fact cocaine. He contends that the government should not have been permitted to introduce testimony on the results of a field test. Because the substance was ultimately destroyed, moreover, he claims that he did not have the opportunity to obtain an independent analysis that would have proved it was not cocaine.
 
 
 18
 Sufficiency of the evidence questions turn on whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). In this case it seems to us that the government clearly presented evidence from which a rational factfinder could determine, beyond a reasonable doubt, that the powdery substance taken from Mr. Haidar was cocaine.
 
 
 19
 The customs official testified that he took the substance from a cigarette package removed from Haidar's pocket. After a field test indicated that it was cocaine, the official put it in an envelope, gave it an identifying number, and sent it to his supervisor. The supervisor testified that he mailed the envelope to the chief chemist at a customs laboratory in Chicago, Illinois. The chemist testified that he received the envelope, tested the contents, and determined that it was cocaine. When the tests were completed, he said, he was instructed to destroy the substance.
 
 
 20
 The district court noted in its findings of fact that the field test was only "a screening test for probable cause." Whatever the accuracy of the field test, it is clear that Mr. Haidar was not convicted solely on the basis of that test. As to the destruction of the evidence after the laboratory testing, the Supreme Court held in Arizona v. Youngblood, 488 U.S. 51 (1988), that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." Id. at 58. The district court found that there was no lack of good faith on the part of the customs officials here, and we have no reason to question that finding.
 
 
 21
 Mr. Haidar further contends that he should have been given a translator to help him in understanding the proceedings. Although he says in his pro se brief that "the Court refused to entertain [a request for such assistance]," the transcript does not show that the request was ever made. Mr. Haidar appears to have an adequate command of the English language in any event.
 
 
 22
 Haidar contends, finally, that one of the customs officials who was involved in the tunnel incident failed to identify him at the trial. The portions of the record Mr. Haidar cites do not establish this, and it would make no difference if they did--for Mr. Haidar himself testified that he was in fact arrested at the tunnel on the night in question.
 
 
 23
 Finding none of the assignments of error meritorious, we AFFIRM the conviction.
 
 
 
 *
 The Honorable Wendell A. Miles, United States Senior District Judge for the Western District of Michigan, sitting by designation