**[J-100-2020][Wecht, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 39 MAP 2020 |
| | : | |
| Appellee | : | Appeal from the Order of Superior |
| | : | Court at No. 3314 EDA 2018 dated |
| | : | 12/10/19 affirming the judgment of |
| v. | : | sentence dated 9/25/18 of the |
| | : | Montgomery Court of Common Pleas, |
| | : | Criminal Division, at No. CP-46-CR- |
| | : | 3932-2016 |
| WILLIAM HENRY COSBY, JR., | : | |
| | : | |
| Appellant | : | ARGUED:  December 1, 2020 |

***DISSENTING OPINION***

**JUSTICE SAYLOR**                                    **DECIDED:  June 30, 2021**

I respectfully disagree with the majority's determination that the press release issued by former District Attorney Bruce Castor contained an unconditional promise that the Commonwealth would not prosecute Appellant in perpetuity.  *See* Majority Opinion, *slip op.* at 50-52, 60-64.  Rather, I read the operative language -- "District Attorney Castor declines to authorize the filing of criminal charges in connection with this matter" -- as a conventional public announcement of a present exercise of prosecutorial discretion by the temporary occupant of the elected office of district attorney that would in no way be binding upon his own future decision-making processes, let alone those of his successor. *Accord United States v. Goodwin*, 457 U.S. 368, 380, 102 S. Ct. 2485, 2492 (1982) (explaining that a prosecutor may forgo legitimate charges at one time and file additional charges later); Brief for Appellee at 95 (observing that the Castor press release "says

nothing about the alleged forever immunity"). From my point of view, the majority's position that such statements must be laden with qualifications, on pain of potentially undermining later prosecutions via an effective conferral of transactional immunity, is unsound. *Cf.* Brief for *Amicus* Office of Attorney General at 30 (highlighting that crediting Appellant's position "would effectively assign pardon power to District Attorneys, something this Court has already rejected as unconstitutional.").[1]

I also respectfully differ, in many material regards, with the majority's treatment of the trial court's findings of fact. For example, to counter the trial court's explicit finding that Castor made no promise that the Commonwealth would never prosecute, the majority posits that "[t]he record establishes without contradiction that depriving Cosby of his Fifth

---

[1] The language of the press release indicating that Castor might reconsider his decision is of little significance to my own analysis, since I believe the possibility of reconsideration is inherent and implicit in the exercise of prosecutorial discretion. I note only that I find this specific language to be ambiguous in terms of whether it referred to Castor's charging decision itself or his decision not to elaborate on the reasons for declining prosecution. While the majority asserts that "[n]othing in [the relevant] paragraph pertains to [Castor's] decision not to prosecute Cosby," Majority Opinion, *slip op.* at 64, in point of fact, the second sentence of that paragraph relates that: "The District Attorney does not intend to expound publicly on the details of his decision for fear that his opinions and analysis might be given undue weight by jurors in any contemplated civil action." Press Release dated February 17, 2005, N.T., Feb. 2, 2016, Ex. D-4 (emphasis added). As the Commonwealth observes, "his decision," in this sentence, obviously refers to the decision not to prosecute. See Brief for Appellee at 84 n.29.

The ambiguity arises, however, in the ensuing sentence, stating: "District Attorney Castor cautions all parties to this matter that he will reconsider *this decision* should the need arise." Press Release dated February 17, 2005, N.T., Feb. 2, 2016, Ex. D-4 (emphasis added). In response to the majority's assertion that "this decision" can only refer to Castor's decision to contemporaneously refrain from elaborating, *see* Majority Opinion, *slip op.* at 64, I note that I find the Commonwealth's countervailing rationale to be apt. As it explains: "Earlier in the release[, *i.e.*, in the preceding sentence], . . . [Castor] referred to 'his decision' not to prosecute; in the next sentence he said he might reconsider '[this] decision.' Reasonable people would read the [latter] sentence as referring to the decision not to prosecute," referenced immediately before. Brief for Appellee at 84 n.29.

Amendment right was D.A. Castor's intended result." Majority Opinion, *slip op.* at 68. The fact of an unwritten promise, however, was rejected on credibility grounds, and Castor's account of his motivations underlying his uncredited assertion of a promise need not be separately contradicted by record evidence to also fall by the wayside. In any event, there are numerous possible explanations for why Castor issued a press release reflecting his decision not to prosecute in a high-profile matter, as well as for why he subsequently claimed there was a promise not to prosecute, beginning in his ensuing correspondence with his successor.[2] From my point of view, the majority opinion

---

[2] In this regard, the Commonwealth posits as follows:

> The first time [the alleged promise not to prosecute] was reflected in any written form was in Castor's 2015 emails. This alone calls its existence into question. That an experienced district attorney, a veteran criminal defense attorney, and several competent civil attorneys would fail to leave a paper trail of such a significant agreement beggars belief. And Castor wrote those emails in the midst of a political campaign for district attorney, after he had learned of a renewed investigation into the case. He would face negative publicity if criminal charges were filed before the election. He tried to discourage then-District Attorney Ferman from filing charges by rewriting history in light of the political facts on the ground in 2015. His testimony at the hearing was also inconsistent with his 2005 press release, his statements to journalists over the years, and irreconcilable with his September 2015 emails to District Attorney Ferman.

Brief for Appellee at 92-93.

Again, it matters little whether the Commonwealth's portrayal is wholly accurate. The determinative factor here should be the trial court's well-supported rejection of Castor's bizarre portrayal of his thought processes, in which: he found that Andrea Constand had drastically damaged her credibility through delayed reporting, pervasive contradictions, and post-assault contacts with Appellant; Castor nevertheless believed Constand's account of the sexual assault despite having never personally met or interviewed her; he decided to act as a "Minister of Justice" to orchestrate unwanted interference in the

supplants the trial court's fact-finding on critical points -- including the fact of a promise and the asserted reliance -- in contravention of the operative principles of review set forth in the opinion. *See id.* at 48-49.[3]

For these reasons, I respectfully dissent relative to the Court's order directing a discharge. I note, however, that I have substantial reservations about the trial court's decision to permit the Commonwealth to present testimony from other asserted victims of sexual assaults by Appellant, which allegedly occurred from between fifteen and twenty-two years in the past. Since under the majority's approach the issue is moot, I merely take the opportunity to note that my present, tentative inclination would be to award a new trial grounded upon Appellant's challenge to such evidence as being unduly prejudicial. *See generally Commonwealth v. Hicks*, 638 Pa. 444, 484-85, 156 A.3d 1114, 1138 (2017) (Saylor, C.J., concurring) ("I maintain concerns about the power of potentially inevitable character inferences associated with other-acts evidence, with requiring

---

proceedings in a yet-to-be-filed civil case against Appellant; and, despite believing that Constand was attempting to extort money from Appellant, he "was hoping [she] would sue Cosby, make a lot of money and, incidentally, her lawyers make a big contingent fee." N.T., Feb. 2, 2016, at 48, 64, 114-15, 188, 202, 228 (testimony of Bruce L. Castor, Jr.). The inconsistencies and contradictions notwithstanding, the trial court was under no obligation to accept such an account. *See* Brief for Appellee at 102 (explaining why it is inappropriate for "a prosecutor to pick sides in a civil case after they have determined not to file criminal charges.").

[3] The trial court explained, at length, why Appellant likely acted in his own interest (and not in reliance on the asserted unwritten commitment never to prosecute) when he sat for depositions in the civil case. *See Commonwealth v. Cosby*, No. 3314 EDA 2018, *slip op.* at 64-66 (C.P. Montgomery May 14, 2019); *see also* Brief for Appellee at 89-91, 96-98.

Additionally, I agree with the trial court, the Commonwealth, and its *amici* that any claimed reliance would be unreasonable. *Accord* Brief for *Amicus* Office of Attorney General at 29 ("Defendant's reliance on an alleged oral promise that was unwritten, unrecorded, and vague was also unreasonable, if not reckless.").

defendants to effectively defend mini-trials concerning collateral matters, and about the efficacy of jury instructions in this context.").