UNITED STATES of America, Plaintiff,

v.

Manuel A. QUIROZ, Defendant.

No. 01–40120–01–JAR.

United States District Court, D. Kansas.

Oct. 24, 2002.

Ralph Gomez, Topeka, KS, pro se.

Ronald E. Wurtz, Office of Federal Public Defender, Topeka, KS, Edward M. Collazo, Topeka, KS, for Defendant.

## MEMORANDUM ORDER AND OPINION

ROBINSON, United States Magistrate Judge.

This matter is before the Court on defendant Manuel Quiroz's Motion for New Trial (Doc.66) and Motion to Set Aside Verdict under 28 U.S.C. § 2255 (Doc. 77). The United States has responded to both motions (Doc. 67 and 79). An evidentiary hearing was conducted on October 15, 2002; counsel made argument on the appropriate remedy on October 21, 2002, at which time the Court took the matter under advisement. Having reviewed the evidence and arguments presented by the parties, the Court is now prepared to rule.

### Background

Defendant Manuel Quiroz, along with co-defendant Fernando Lozano, was charged with one count of possession of approximately 11.8 kilograms of cocaine with the intent to distribute. The Court denied defendant's motion to suppress all statements made as a result of an allegedly unlawful detention. The Court granted defendant's motion in limine regarding defendant's invocation of his right to remain silent. Defendant did not testify at trial. Following a three-day trial, the jury returned a verdict finding defendant Quiroz guilty of possession of cocaine with the intent to distribute. Co-defendant Lozano was found not guilty.

At trial, defendant was represented by Assistant Federal Public Defender, Ron Wurtz. Sentencing was initially set for August 12, 2002, but was continued upon filing of the Motion for New Trial by Mr. Wurtz. In that motion, defendant's sole argument is that the prosecution wrongfully and unconstitutionally commented on the defendant's silence in violation of his right to due process of law as explicated by the Supreme Court in Doyle v. Ohio.[1] Mr. Wurtz withdrew from the case on July 9, 2002, in order that defendant might pursue a claim of ineffective assistance of counsel.

A Motion to Set Aside Verdict under 28 U.S.C. § 2255 (Doc. 77) was filed September 10, 2002, by defendant's new counsel, Edward M. Collazo. Defendant essentially alleges that his former attorney's performance was constitutionally deficient because Mr. Wurtz did not accurately advise him of the possible penalties he faced if he pled or went to trial and if he had been advised correctly, he would have accepted the plea offer made by the prosecution. Specifically, on March 14, 2002, Mr. Wurtz sent defendant a letter advising him of the possible penalties for possession of ten to twenty kilograms of marijuana. In fact, defendant was charged with possession of ten to twenty kilograms of cocaine, with a base offense level of 32, as opposed to 13 or 16 as Mr. Wurtz described in his letter. The government argues that the erroneous advice was a word-processing error and that the correct penalties were fully set out in the plea agreement documents forwarded to Mr. Wurtz long before trial. The Court construed this motion as a sup-

1. 426 U.S. 610, 619, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976).

plemental motion for new trial and set the matter for evidentiary hearing.

Four witnesses testified at the hearing conducted October 15, 2002: defendant's church youth group leader, Arturo Alvarez; defendant's former roommate, Benjamin Avila; Mr. Wurtz; and defendant. Both Mr. Alvarez and Mr. Avila testified that they had read the March 14, 2002 letter and were surprised when defendant told them after his conviction that he was facing a ten year sentence rather than 21–27 months as set forth in the letter. Mr. Avila then wrote to Mr. Wurtz expressing his concerns. Mr. Wurtz testified that he did not realize that the March 14 letter was in error until after defendant was convicted and he received the letter from Mr. Avila. Mr. Wurtz testified that he did not send the plea agreement to defendant and all of his conversations with defendant were made with the assumption that defendant understood he faced ten years. Defendant testified that, based on the March 14 letter, he believed the risk of going to trial was insignificant, as he believed the difference between the plea offer and conviction was only six months. Defendant testified that he did not know the penalties for marijuana and cocaine possession were significantly different as he had never been in trouble with the law before. Neither defendant nor Mr. Wurtz could recall discussing the possibility of a ten year sentence. Defendant testified that he could not recall the magistrate judge informing him of the possible penalties at his Rule 5 hearing.

### Comments of prosecution

Defendant argues that the prosecutor's comments were an impermissible reference to his post-arrest silence. In *Doyle v. Ohio*, the Supreme Court established that the use for impeachment purposes of a defendant's post-arrest and post-*Miranda*-warning silence violates the Due Process Clause of the Fourteenth Amendment.[2] "This rule is based upon a recognition that it is fundamentally unfair for the government to inform a defendant of his right to remain silent and then ask at trial that a negative inference be drawn from that silence."[3]

In a later Supreme Court case, *Anderson v. Charles*,[4] the defendant argued that the prosecutor's questions on cross-examination, regarding the defendant's failure to tell the same story at the time of his arrest as he was telling at trial, violated the rule announced in Doyle. The Supreme Court disagreed, stating that "Doyle does not apply to cross-examination that merely inquires into prior inconsistent statements. Such questioning makes no unfair use of silence, because a defendant who voluntarily speaks after receiving *Miranda* warnings has not been induced to remain silent."[5] The Court found such line of questioning proper because it was designed to elicit an explanation for a prior inconsistent statement rather than to draw inferences from silence.[6] In conclusion, the Supreme Court stated: "Each of two inconsistent descriptions of events may be said to involve 'silence' insofar as it omits facts included in the other version. But

**2.** 426 U.S. 610, 619, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). The issue in *Doyle* was whether a prosecutor may seek to impeach a defendant's exculpatory story, told for the first time at trial, by cross-examining the defendant about his failure to have told the story after receiving *Miranda* warnings at the time of his arrest.

**3.** *United States v. Canterbury*, 985 F.2d 483, 486 (10th Cir.1993).

**4.** 447 U.S. 404, 100 S.Ct. 2180, 65 L.Ed.2d 222 (1980).

**5.** *Id.* at 408, 100 S.Ct. 2180.

**6.** *Id.* at 409, 100 S.Ct. 2180.

Doyle does not require any such formalistic understanding of 'silence,' and we find no reason to adopt such a view in this case."[7]

In *United States v. Canterbury*,[8] the Tenth Circuit recognized the principle that while due process forbids comment on a defendant's post-arrest, post-*Miranda* silence, a prosecutor may impeach a defendant's trial testimony with prior inconsistent statements.[9] However, application of the *Doyle* and *Anderson* principles was complicated by the fact that Canterbury did not remain totally silent, but instead made several statements to the police after receiving *Miranda* warnings. The Tenth Circuit recognized that when a defendant is "partially silent" by answering some questions and refusing to answer others, this partial silence does not preclude him from claiming a violation of his due process rights under *Doyle*.[10] The *Canterbury* court determined that the appropriate inquiry in these situations is whether the cross-examination was designed to impeach the defendant's trial testimony by calling attention to prior inconsistent statements or, instead, was designed to suggest an inference of guilt from the defendant's post-arrest silence.[11]

In *United States v. Mora*,[12] the Tenth Circuit recognized that the test for determining if there has been an impermissible comment on a defendant's right to remain silent at the time of his arrest is "whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment" on the defendant's right to remain silent. ... The court must look to the context in which the statement was made in order to determine the manifest intention which prompted it and its natural and necessary impact on the jury.[13]

█ In the event the prosecutor's comments were erroneous, the court must assess whether they were harmless. In determining harmlessness, the court determines whether the challenged comments had "substantial and injurious effect or influence in determining the jury's verdict."[14] The court may consider the following factors in assessing harmless error: (1) the prosecutor's use of the post-arrest silence; (2) whether the defense or prosecution pursued this line of questioning; (3) the amount of evidence indicating guilt; (4) the frequency and force of the reference; and (5) if the defense requested a mistrial or curative instructions.[15] The essence of this inquiry is usually the purpose for which the defendant's silence was introduced, and the quantum of other evidence supporting the guilty verdict.[16]

**7.** *Id.*

**8.** 985 F.2d 483 (10th Cir.1993).

**9.** *Id.* at 486.

**10.** *Id.* (citing *United States v. Harrold*, 796 F.2d 1275 (10th Cir.1986), *cert. denied* 479 U.S. 1037, 107 S.Ct. 892, 93 L.Ed.2d 844 (1987)).

**11.** *Id.*

**12.** 845 F.2d 233 (10th Cir.1988).

**13.** *Id.* at 235 (quoting *United States v. Morales–Quinones*, 812 F.2d 604 (10th Cir.1987) (citation omitted)).

**14.** *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (quotation omitted); *see also Hale v. Gibson*, 227 F.3d 1298, 1324–25 (10th Cir.2000); *Bryson v. Ward*, 187 F.3d 1193, 1204–06 (10th Cir. 1999), *cert. denied*, 529 U.S. 1058, 120 S.Ct. 1566, 146 L.Ed.2d 469 (2000).

**15.** *See Canterbury*, 985 F.2d at 486–87.

**16.** *Id.* at 487.

■ Viewing the prosecutor's comments in closing arguments in context, it does not appear that they were "manifestly intended" to be a comment on defendant's "partial silence," nor would the jury "naturally and necessarily" take them as such. Rather, the focus of the prosecutor's comments was not on defendant's failure to present his exculpatory story at the time of arrest, but was in response to defense counsel's closing argument that defendant did not own the van or know that it contained cocaine. This argument was inconsistent with defendant's prior post-*Miranda* statements that he owned the van and that he had made a "stupid mistake and would pay the price for getting involved."

■ Even if the prosecution's isolated remarks were erroneous, they were harmless. The evidence of defendant's guilt (more than 11 kilograms of cocaine found in hidden compartments in a van registered in his name) was substantial. The prosecutor did not attempt to use defendant's post-*Miranda* silence to establish guilt or to impeach his testimony, but as a rebuttal to defense counsel's closing argument. Significantly, defense counsel did not contemporaneously object to the comments made in closing rebuttal argument. In light of these factors, the prosecutor's brief comments did not influence the jury's verdict. Accordingly, defendant's motion for new trial is denied on this ground.

### Ineffective assistance of counsel

■ In order to succeed on a claim of ineffective assistance of counsel, a petitioner must show both that his counsel's performance was constitutionally deficient such that he was not functioning as the "counsel" guaranteed by the Sixth Amendment, and that he was prejudiced by his counsel's errors.[17] To prove constitutionally deficient performance, a petitioner must show that his counsel's performance fell below an objective standard of reasonableness under prevailing professional norms.[18] If he can meet this standard, then a petitioner must establish prejudice by demonstrating that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[19] A "reasonable probability" is a "probability sufficient to undermine confidence in the outcome."[20]

The *Strickland* analysis also applies to claims of ineffective assistance of counsel involving counsel's advice offered during the plea process.[21] According to the Supreme Court, a petitioner who asserts that his counsel was constitutionally ineffective for encouraging him to plead guilty must prove both that his counsel's performance was deficient and that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."[22] Conversely, defendant contends that, but for counsel's errors, he would have accepted the plea offer instead of proceeding to trial.

### 1. Deficient performance

■ In *Strickland*, the Supreme Court stated that judicial scrutiny of defense counsel's performance should be "highly deferential," avoid second-guessing, and begin with a "strong presumption" that counsel's conduct fell within "the wide

---

**17.** *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

**18.** *Id.* at 687–88, 104 S.Ct. 2052.

**19.** *Id.* at 694, 104 S.Ct. 2052.

**20.** *Id.*

**21.** *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).

**22.** *Id.* at 59, 106 S.Ct. 366.

range of reasonable professional assistance." [23] Keeping in mind these standards, the Court finds that Mr. Wurtz's erroneous advice regarding the range of defendant's possible sentence and failure to remedy the mistake/misunderstanding before trial falls below an "objective standard of reasonableness." [24]

### 2. Prejudice

There is a split among the courts of appeal as to whether a defendant's post-conviction testimony that he would have accepted a plea offer is sufficient to show prejudice, or, conversely, whether the defendant must adduce objective evidence to that effect. The Seventh and Second Circuits have held that a defendant's post-conviction testimony that he would have accepted the plea is insufficient to establish prejudice. Instead, those courts have required the defendant to come forward with additional objective evidence to prove that the defendant would have accepted the plea offer. [25] The Sixth Circuit does not explicitly require the additional objective evidence, [26] although it has approved of a district court decision which concluded that the defendant had offered sufficient objective evidence. [27]

The Tenth Circuit, in an unpublished decision, cited the Sixth Circuit in holding that to prove prejudice in the context of a case like this, a defendant "must establish that there is a reasonable probability that, but for the incompetence of counsel, he would have accepted the ... offer and pled guilty." [28] The court further held that a defendant's own self-serving testimony alone is insufficient to demonstrate a reasonable probability. [29] The defendant must produce objective evidence that he would have accepted the plea. [30] Thus, the test by which prejudice must be measured is whether defendant has established by objective evidence that there is a reasonable probability that, but for the incompetence of counsel, he would have accepted the 70 month plea offer and pled guilty.

■ In this case, defendant offered objective evidence in support of his claim of prejudice. Significantly, Mr. Wurtz testified that correspondence sent to defendant set forth the possible penalties for possession of marijuana rather than cocaine, with a significantly lower sentence range (21–27 months versus 120 months). Mr. Wurtz testified that he did not recall specifically discussing the ten year sentence with defendant, but assumed that defendant was aware of the correct penalty. Defendant's misunderstanding was further corroborated by a member of his church and his roommate. This objective testimony, coupled with defendant's own declarations, convinces the Court that there is at least a reasonable probability that, but for the deficiencies in counsel by Mr. Wurtz, defendant would have accepted the plea offer had he known his true sentencing exposure. Accordingly, the Court holds that defendant has established prejudice under *Strickland.* Defendant was denied the ef-

23. 466 U.S. at 689, 104 S.Ct. 2052.

24. *Id.* at 688, 104 S.Ct. 2052.

25. *Paters v. United States*, 159 F.3d 1043, 1047 (7th Cir.1998); *United States v. Gordon*, 156 F.3d 376, 381 (2d Cir.1998).

26. *Magana v. Hofbauer*, 263 F.3d 542, 547 n. 1 (6th Cir.2001).

27. *Turner v. Tennessee*, 858 F.2d 1201, 1207 (6th Cir.1988), *vacated on other grounds*, 492

U.S. 902, 109 S.Ct. 3208, 106 L.Ed.2d 559 (1989).

28. *Bachicha v. Shanks*, 1995 WL 539467, at *2 (10th Cir.1995) (quoting *Turner v. Tennessee*, 858 F.2d at 1206).

29. *Id.*

30. *Id.*

fective assistance of counsel guaranteed by the Sixth Amendment.

### Remedy

In *United States v. Morrison*,[31] the Supreme Court observed that a remedy for a Sixth Amendment violation "should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests." Because the remedy for a Sixth Amendment violation should "neutralize" the constitutional deprivation suffered by the defendant, a new trial is an inappropriate remedy in this case, where defendant had constitutionally deficient counsel during the plea negotiation process.[32] Under circumstances similar to this case, the Sixth Circuit held that as a remedy, the prosecution was free to offer the defendant another plea bargain, but that any plea offer in excess of the original offer must overcome a rebuttable presumption of prosecutorial vindictiveness. In *Turner v. Tennessee*,[33] the court concluded that the appropriate remedy in lieu of a new trial was a plea hearing at which the petitioner would present the former plea offer as a completed agreement for the court to consider.[34] At the plea hearing, the prosecutor could seek to show that there are demonstrable reasons why the government should not be bound by the old offer and, therefore, be allowed to rescind the "agreement" presumptively created for consideration by the court.[35] The showing by the government must be of a manner and type sufficient to rebut the presumption of vindic-

tiveness.[36] If made, a satisfactory showing would rescind the original plea agreement and free the parties to renegotiate.[37]

■ The Court adopts the reasoning of the Sixth Circuit in *Turner*, which has been cited with favor by the Tenth Circuit,[38] albeit in an unpublished opinion. The only way to neutralize the constitutional deprivation suffered by defendant in this case would be to provide him with an opportunity to consider the United States' plea offer with the effective assistance of counsel. Accordingly, the Court shall grant defendant a new plea hearing, at which defendant has an opportunity, if he chooses, to present the former plea offer of approximately 70 months as a presumptively completed plea agreement for consideration by the Court. The United States has the opportunity, if it chooses, to seek rescission of the putative agreement conditioned upon an objective showing sufficient to rebut the presumption of prosecutorial vindictiveness, under the *United States v. Goodwin*[39] line of precedents. At the plea hearing, the Court will determine whether the plea offer constitutes a completed plea agreement or whether it is rescinded. If the Court determines that the plea agreement is completed, the Court will set aside the verdict, conditioned on defendant entering a plea. If the Court determines that the plea agreement is rescinded, the Court will continue the matter to allow defendant sufficient time to determine whether he should enter a plea without a plea agreement, and the

---

**31.** 449 U.S. 361, 364, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981).

**32.** *Id.* at 365, 101 S.Ct. 665.

**33.** 858 F.2d at 1207.

**34.** *Id.*

**35.** *Id.*

**36.** *Id.* at 1213 (citing *United States v. Goodwin*, 457 U.S. 368, 381–83, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982) (analysis of (1) the "nature of the right asserted" and (2) the timing of the prosecutor's action)).

**37.** *Id.*

**38.** *Bachicha*, 1995 WL 539467 at *2.

**39.** 457 U.S. at 368, 102 S.Ct. 2485.

Court shall continue the motion to set aside verdict to the next hearing.

IT IS THEREFORE ORDERED BY THE COURT that defendant's Motion for New Trial (Doc. 66) is DENIED.

IT IS FURTHER ORDERED that defendant's Motion to Set Aside Verdict (Doc. 77) is continued to the plea hearing, with the specific conditions stated above, to be held *at 3:00 p.m. on November 18, 2002.*

IT IS SO ORDERED.