**Opinion issued November 21, 2012**



In The

# Court of Appeals
### For The
# First District of Texas
_____

### NO. 01-11-00864-CR
_____

### PEDRO ANGEL GUTIERREZ, JR., Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the 176th District Court**
**Harris County, Texas**
**Trial Court Case No. 1272197**

## MEMORANDUM OPINION

After appellant waived his right to a jury, the trial court found appellant

Pedro Angel Gutierrez, Jr. guilty of the third-degree felony offense of evading

arrest or detention using a vehicle and having been previously convicted of

evading detention.[1]  After finding allegations in two enhancement paragraphs to be true, the trial court sentenced appellant, as a habitual felony offender, to 25 years in prison.[2]

Appellant raises three issues on appeal.  He contends that (1) the evidence was insufficient to prove the allegations in the State's enhancement paragraphs; (2) the trial court erred by finding that the State had not engaged in prosecutorial vindictiveness; and (3) the evidence is insufficient to support his conviction for evading arrest.

We affirm.

## Background Summary

At 1:55 in the morning on July 28, 2010, Deputy M. Gustaffson of the Harris County Sherriff's Office was on patrol in his marked police car when he saw appellant commit the traffic offense of failing to signal a turn.  Deputy Gustaffson decided to stop appellant based on that traffic offense.

The deputy was 200 feet from appellant when he saw the offense.  He had to turn his vehicle around to effectuate the stop.  As he was turning his vehicle

---

[1]  *See* Act of May 27, 2009, 81st Leg., R.S., ch. 1400, § 4, 2009 Tex. Gen. Laws 4385, 4385–86 amended (current version TEX. PEN. CODE ANN. § 38.04 (Vernon Supp. 2012).  Section 38.04(b) was amended in 2011.  The amendment is not applicable here because the offense occurred prior to the date the amendments became effective.

[2]  *See* PEN. CODE ANN. § 12.42(d) (Vernon 2011).

around, Deputy Gustaffson saw appellant's vehicle rapidly increase its speed and turn onto another street. Deputy Gustaffson did not initially activate the emergency lights and siren on his vehicle. He later testified at trial that he thought that appellant was already fleeing from him, and he did not want to "spook" appellant "into running any quicker by turning on my lights." Deputy Gustaffson wanted to catch up to appellant's vehicle. He stated that he needed to get appellant's license plate number before he "initiated the actual pursuit."

As he attempted to get close to appellant's vehicle, Deputy Gustaffson followed appellant as he turned onto to a series of streets. Appellant continued to speed as he drove. Deputy Gustaffson decided to activate the emergency lights and siren on his patrol car because it was apparent to him the appellant was fleeing from him. At that point, Deputy Gustaffson called into dispatch that he was engaging in a pursuit of a vehicle.

After the deputy activated the lights and siren on his patrol car, appellant continued to speed, driving between 50 and 70 miles per hour down the street. Appellant ran through two red lights without stopping at an intersection. Appellant drove on and made a turn at a red light without stopping. Appellant continued driving at approximately 70 miles per hour through a residential neighborhood. Appellant ran through another red light without stopping. At the next intersection, appellant did not stop at a stop sign. He was traveling over 70 miles per hour as he

3

went through the intersection. Appellant continued to another intersection, disregarded the stop sign, and made a right turn. The lights and siren on the patrol car had remained on since Deputy Gustaffson had activated them. Appellant then made a turn at an intersection, again disregarding a stop sign.

Around this time, Deputy Gustaffson saw appellant turn off his headlights and continued to drive. Deputy Gustaffson would testify that law enforcement call this being "blacked out."

Because he was familiar with the area, Deputy Gustaffson was able to head off appellant's vehicle. Appellant ultimately stopped his vehicle. His headlights were still turned off.

Appellant was indicted for the offense of evading arrest or detention by using a motor vehicle. Because the indictment also alleged that appellant had previously been convicted of evading detention in February 2010, the instant offense was elevated to a third-degree felony.[3] The indictment also contained two enhancement paragraphs, alleging that appellant had been convicted in 2003 of the offense of burglary of a habitation and convicted in 2008 of the offense of possession of a controlled substance.

---

[3]    *See* Act of May 27, 2009, 81st Leg., R.S., ch. 1400, § 4, 2009 Tex. Gen. Laws 4385, 4385–86 amended (current version TEX. PEN. CODE ANN. § 38.04 (Vernon Supp. 2012)).

4

Appellant waived his right to a jury, and the case was tried to the bench. To support the primary offense, the State presented the testimony of Deputy Gustaffson. Appellant stipulated to the evidence showing that he had been previously convicted of evading detention. The trial court found appellant guilty of the primary offense of third-degree evading arrest or detention.

Appellant pleaded "not true" to the two enhancement allegations in the indictment. The State offered the "pen packets," with the judgments and sentences for the two felony offenses described in the indictments' two enhancement paragraphs and finger print cards for each offense. The State presented the testimony of a fingerprint expert. He testified that he had recently taken appellant's fingerprints. He had compared those prints with those in the pen packets. He had concluded that the fingerprints in the pen packets were those of appellant.

The trial court found the enhancement allegations to be true. Based on these findings, appellant was sentenced as a habitual offender. The trial court sentenced him to 25 years in prison. This appeal followed. Appellant raises three issues on appeal.

**Sufficiency of the Evidence to Prove Primary Offense**

In his third issue, appellant alleges that the evidence was insufficient to show that he committed the offense of evading arrest or detention.

5

### A.    Standard of Review

This Court reviews sufficiency-of-the-evidence challenges applying the same standard of review, regardless of whether an appellant presents the challenge as a legal or a factual sufficiency challenge. *See Ervin v. State*, 331 S.W.3d 49, 53–55 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) (construing majority holding of *Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010)). This standard of review is the standard enunciated in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). *See id.* Pursuant to this standard, evidence is insufficient to support a conviction if, considering all the record evidence in the light most favorable to the verdict, no rational fact finder could have found that each essential element of the charged offense was proven beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *In re Winship*, 397 U.S. 358, 361, 90 S. Ct. 1068, 1071 (1970); *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009); *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). We can hold evidence to be insufficient under the *Jackson* standard in two circumstances: (1) the record contains no evidence, or merely a "modicum" of evidence, probative of an element of the offense, or (2) the evidence conclusively establishes a reasonable doubt. *See Jackson*, 443 U.S. at 314, 318 n.11, 320, 99 S. Ct. at 2786, 2789 n.11, 2789; *see also Laster*, 275 S.W.3d at 518; *Williams*, 235 S.W.3d at 750.

6

The sufficiency-of-the-evidence standard gives full play to the responsibility of the fact finder to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). An appellate court presumes that the fact finder resolved any conflicts in the evidence in favor of the verdict and defers to that resolution, provided that the resolution is rational. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793.

In viewing the record, direct and circumstantial evidence are treated equally; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Clayton*, 235 S.W.3d at 778. Finally, "[e]ach fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

## B. Law of the Offense

At the time of the commission of the instant offense, the Penal Code provided that a person committed the offense of evading arrest or detention if he intentionally fled from a person he knew was a peace officer attempting lawfully to arrest or detain him. *See* Act of May 27, 2009, 81st Leg., R.S., ch. 1400, § 4, 2009 Tex. Gen. Laws 4385, 4385–86 amended (current version TEX. PEN. CODE ANN.

7

§ 38.04 (Vernon Supp. 2012)). The offense was elevated to a third-degree felony if the actor used a vehicle while in flight and the actor had previously been convicted of the offense of evading arrest or detention. *See id.* The law is clear that a person commits the offense of evading arrest or detention only if he knows that a peace officer is attempting to arrest or detain him, but nevertheless, refuses to yield to a police show of authority. *See Hobyl v. State*, 152 S.W.3d 624, 627 (Tex. App.—Houston [1st Dist.] 2004, pet. dism'd) ("[T]he accused must *know* that the person from whom he flees is a peace officer attempting to arrest or detain him."); *Brooks v. State*, 76 S.W.3d 426, 434 (Tex. App.—Houston [14th Dist.] 2002, no pet.).

## C. Analysis

In support of his sufficiency challenge, appellant asserts that the evidence did not show that he knew that a peace officer was attempting to detain him. Appellant points out that there was no video camera in Deputy Gustaffson's patrol car; thus, there was no video of the pursuit. Although there was no video evidence of the pursuit, Deputy Gustaffson gave detailed testimony. With the aid of maps of the area, Deputy Gustaffson described the point at which he activated the patrol car's lights and siren, the exact route taken during the pursuit, and the manner in which appellant was driving.

Appellant also asserts that, "for a major portion of the incident," the emergency lights and siren on Deputy Gustaffson's patrol car were not activated.

8

Contrary to this assertion, Deputy Gustaffson testified that he pursued appellant without the lights and siren activated for approximately 45 seconds. He stated that he activated the emergency equipment when he called the pursuit into dispatch. His testimony and the police "call slip," indicating when Deputy Gustaffson called the pursuit into dispatch, and when the pursuit ended, indicate that he pursued appellant with his emergency equipment activated for over two-and-one-half minutes.

Appellant further contends that the record does not indicate that appellant heard the siren on Deputy Gustaffson's patrol car once it was activated. The deputy testified that, after he saw appellant commit the traffic offense, he was not close to appellant's vehicle. For this reason, he did not initially activate the lights or siren on his patrol car. The deputy testified that he thought doing so might cause appellant to flee. The deputy stated that he was attempting to catch up to appellant when he formed the belief that appellant already knew he was pursuing him. At that point, the deputy activated his emergency equipment.

Although the record does not reflect how close Deputy Gustaffson ultimately got to appellant's vehicle, the evidence shows that, after the deputy activated his emergency equipment, appellant ran through four red lights and three stop signs traveling at times in access of 70 miles per hour. The evidence also showed that, after the deputy had activated his emergency equipment, appellant

9

turned off his headlights and continued to drive until he was headed off and stopped by the deputy. From this evidence, the trial court, as the fact finder, could have reasonably inferred that, from the time Deputy Gustaffson activated his emergency equipment, appellant knew that the deputy was a peace officer attempting lawfully to detain him.

Viewing all the evidence, direct and circumstantial, in the light most favorable to the jury verdict, we conclude that a rational fact finder could have found, beyond a reasonable doubt, all of the essential elements of the charged offense of evading detention. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789. More precisely, the trial court could have found, beyond a reasonable doubt, that appellant intentionally fled from a person he knew was a peace officer attempting lawfully to detain him. We hold that the evidence is sufficient to support the judgment of conviction.

We overrule appellant's third issue.

### Sufficiency of the Evidence Regarding Enhancement Allegations

In his first issue, appellant contends that the evidence was not sufficient to support the trial court's finding that the State's two enhancement allegations were true. Specifically, appellant contends that the State failed to show that he is the same person previously convicted of the offenses of burglary of a habitation and

10

possession of a controlled substance, as alleged in the enhancement paragraphs of the indictment.

To establish a prior conviction for sentence enhancement purposes, the State must prove beyond a reasonable doubt that the prior conviction exists and the defendant is linked to that conviction. *Flowers v. State*, 220 S.W.3d 919, 921 (Tex. Crim. App. 2007); *Beck v. State*, 719 S.W.2d 205, 210 (Tex. Crim. App. 1986) ("It is incumbent on the State to go forward and show by independent evidence that the defendant is the person so previously convicted."). No specific document or type of proof is required. *Flowers*, 220 S.W.3d at 921.

At trial, the State offered the testimony of Harris County Sheriff's Office Crime Scene Investigator Deputy G. Clayton. He testified that his job duties include fingerprint identification. Through Deputy Clayton, the State introduced Exhibit 12, a document containing the inked right and left thumb print of appellant. The deputy stated that he had taken the prints from appellant.

The State also introduced Exhibit 5, authenticated business records of the Texas Department of Corrections. Exhibit 5 contains pen packets pertaining to convictions for the offenses of burglary of a habitation and possession of a controlled substance. The exhibit includes a judgment of conviction and sentence for burglary of a habitation and a judgment of conviction and sentence for possession of a controlled substance. Each judgment bears appellant's name,

11

"Pedro Angel Gutierrez, Jr."  Each judgment also has appellant's thumb print on the last page.  The thumb print on the judgment for the offense of burglary of a habitation is very faint.

The pen packets also contain photographs of Pedro Angel Gutierrez, Jr and a finger print card for each of the two enhancement offenses: burglary of a habitation and a possession of a controlled substance.  In addition to identifying the offense and the sentence received for each offense, the fingerprint card contains appellant's name, date of birth, sex, race, weight, height, eye color, hair color, and skin tone.  Each print card has finger prints for all five fingers, including a right and left thumb print.  Deputy Clayton testified that he compared the finger prints in the pen packet with those in Exhibit 12.  He stated that the fingerprints in the pen packet were the same as those in Exhibit 12.  In other words, he matched the prints in the pen packets to those contained in Exhibit 12, which were established to be appellant's prints.

The Court of Criminal Appeals has "consistently held that a prior conviction alleged for enhancement . . . may be established by certified copies of a judgment and a sentence and authenticated copies of the Texas Department of Corrections records including fingerprints, supported by expert testimony identifying them as identical with known prints of the defendant."  *Beck*, 719 S.W.2d at 209.  Viewing the evidence in the light most favorable the judgment, we conclude that the

evidence was sufficient to link appellant beyond a reasonable doubt to the convictions alleged in the two enhancement paragraphs. *See id.* We hold that the evidence was sufficient to support the trial court's findings of true for the two enhancement allegations.

We overrule appellant's first issue.

## Prosecutorial Vindictiveness

In his second issue, appellant asserts that "the trial court erred in not finding that the State engaged in prosecutorial vindictiveness."

Appellant filed a motion to quash the enhancement allegations in the indictment. To support the motion, he argued, in part, that the State had engaged in prosecutorial vindictiveness. Appellant explained that, on the day following his arrest for the instant offense, the State had presented a criminal complaint that did not include the two enhancement paragraphs. At that time, the State offered to recommend that appellant receive a two-year prison sentence in return for a guilty plea. Appellant rejected the offer. In his motion to quash, appellant explained that he told the State that he was rejecting the offer because "he had been unable to contact his family." Appellant wrote, "At the following court appearance, after indictment and inclusion of the two enhancement paragraphs, the State offered 25 years. And at all times since the State has offered no less than 'double digits.'"

13

Before trial, the trial court heard appellant's motion to quash. Appellant argued that the State had engaged in prosecutorial vindictiveness because it had increased the minimum amount of punishment that it would accept to enter into a plea bargain. The record from the hearing shows that appellant was represented by counsel the day after his arrest, when he rejected the State's offer of a two-year sentence. It also shows that appellant later counter-offered with a six-year sentence. The State rejected the counter-offer, indicating that it would not accept less than a "double digit" sentence.

At the hearing, the prosecutor acknowledged that appellant had been cooperative and had not committed any additional criminal offenses since his arrest. The prosecutor explained why the minimum sentence that the State would accept had increased. He stated that the initial two-year offer had been made because the case "came out of Intake improperly." The prosecutor explained that State's current offer of a 25-year sentence was based on appellant's habitual offender status and on his criminal record showing 13 past criminal convictions. The prosecutor also cited "the dangerous nature of the pursuit" in this case.

Appellant testified at the hearing. He stated that he was willing to accept a six year sentence in exchange for pleading guilty. He explained that he had rejected the State's initial two-year offer because he wanted to speak with his wife

14

about it. On cross-examination, appellant acknowledged that his wife was not an attorney.

At the end of the hearing, the trial court denied appellant's motion to quash. On appeal, appellant contends that the trial court erred in its ruling. He asserts, "[A] decision to prosecute violates due process when criminal charges are brought in retaliation against a Defendant for exercising his legal rights."

In his brief, appellant raises an argument to support his prosecutorial vindictiveness claim that he did not assert in the trial court. He now contends that the State raised the minimum sentence it would accept for a plea bargain in retaliation for appellant's exercise of his right to prepare a defense. Specifically, appellant intimates that he did not accept the two-year offer because he needed time to determine whether Deputy Gustaffson's patrol car had a dash camera, which could have recorded the pursuit. In other words, he needed time to determine whether there was an exculpatory video that might aid his defense.

Appellant contends that, once he learned that there was no dash camera, he counter-offered with a six-year sentence, which was rejected. He asserts that the State's refusal to accept his counteroffer, and its prosecution of him as a habitual offender, was done in retaliation for his seeking possible exculpatory evidence to aid in his defense.

15

As mentioned, appellant did not raise this argument in the trial court to support his prosecutorial vindictiveness allegation. When a party asserts an argument on appeal that is different from his argument in the trial court, the issue is forfeited on appeal. *See Rezac v. State*, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990) (holding that a trial court objection stating one legal basis may not be used to support a different legal theory on appeal). Because he did not support his prosecutorial vindictiveness complaint in the trial court with the argument, appellant has waived on appeal his argument that the State retaliated against him for exercising his right to determine whether there was exculpatory evidence. *See id.*

Appellant also intimates that the State was motivated to pursue him as a habitual offender and reject his counteroffer because he exercised his "legal right" to contact his wife before accepting the initial two-year offer.

Generally, prosecutors have broad discretion to decide what charges to file against a criminal defendant. *Neal v. State*, 150 S.W.3d 169, 173 (Tex. Crim. App. 2004). For example, a prosecutor may not increase the charges against a defendant simply as a punishment for invoking a right, such as pursuing an appeal. *Id.* "To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort." *United States v. Goodwin*, 457 U.S. 368, 372, 102 S. Ct. 2485, 2488 (1982). A constitutional claim of prosecutorial

16

vindictiveness may be established in either of two distinct ways: (1) proof of circumstances that pose a "realistic likelihood" of such misconduct sufficient to raise a "presumption of prosecutorial vindictiveness," which the State must rebut or face dismissal of the charges; or (2) proof of "actual vindictiveness"—that is, direct evidence that the prosecutor's charging decision is an unjustifiable penalty resulting solely from the defendant's exercise of a protected legal right. *Neal*, 150 S.W.3d at 173 (citing *Goodwin*, 457 U.S. 368, 380–81, 102 S. Ct. at 2492).

Both avenues to proving prosecutorial vindictiveness require the defendant to exercise a protected legal right. *See id.* Appellant intimates that consulting with his wife before entering into a plea agreement was a "legal right;" however, he provides no legal authority for this. Because appellant has not asserted that he exercised a protected legal right, the trial court did not err when it implicitly found that the State had not engaged in prosecutorial vindictiveness.

We overrule appellant's second issue.

## Conclusion

We affirm the judgment of the trial court.


Laura Carter Higley
Justice

Panel consists of Justices Jennings, Higley, and Sharp.

Do not publish.   Tex. R. App. P. 47.2(b).

17