BROWN, Circuit Judge,
dissenting:
This case presents the following question: May a criminal defendant, in pleading guilty, waive his right to FOIA requests pertaining to the investigation or prosecution underlying his criminal conviction? Thus far, every court to consider this question has answered “yes.” We are now the first to say “no.” The Court suggests its answer is limited only to this case, but no FOIA guilty-plea waiver could ever meet the standard employed here. Worse still, the Court’s answer rests on a distortion of the Supreme Court’s guilty-plea-waiver jurisprudence—a distortion portending far-reaching, and presumably unintended, consequences.
Rather than answer the question presented, the Court crafts a new guilty-plea-waiver standard. Now, the Government is burdened with proving a “legitimate criminal-justice” interest that a court must accept before any guilty-plea waiver is valid. The nature of the right no longer informs whether it is waivable; whether the defendant knowingly, voluntarily, and intelligently waived that right is now beside the point. These changes are in contrast with half-a-century of Supreme Court jurisprudence. The majority tap-dances around the Supreme Court’s well-established standards by calling this a “FOIA suit,” not a waiver case. Op. 679. Nonsense. No fake label will turn a rose into a saguaro. The FOIA statute plays no substantive role in the Court’s novel analysis. This is a case about guilty-plea waivers. See id. at 681-82.
Comparing this decision to the Supreme Court’s long-established guilty-plea-waiver jurisprudence, it is now harder for a defendant to waive his FOIA right to records underlying his criminal conviction than it is to waive his constitutional rights to a jury trial, confronting witnesses, and being presumptively innocent. “How silly is that?” Cf. DJ Gallo, Allen Iverson’s ‘Practice’ Rant: 10 Years Later, ESPN (May 7, 2012) http://www.espn.com/blog/playbook/ fandom/post/_yid/2026/allen-iversons-practice-rant-10-years-later (“[Wje’re not even talking about the game, when it actually matters, we’re talking about practice.”).
Rather than revise the law, we should have applied the Supreme Court’s waiver principles and upheld Price’s FOIA waiver. Because the Court did not do so, choosing cleverness over wisdom, I respectfully dissent.
I.
The Court casts the Supreme Court’s guilty-plea-waiver standards aside while fashioning a newfangled compass from one of Justice O’Connor’s concurring opinions. Citing Town of Newton v. Rumery, 480 U.S. 386, 401, 107 S.Ct. 1187, 94 L.Ed.2d 405 (1987) (O’Connor, J., concurring), the *685 Court finds Price’s waiver invalid because the Government failed to show “any legitimate criminal-justice interest” behind it. Op. 681. But Justice O’Connor’s dicta is not the law. No other Member of the Supreme Court joined Justice O’Connor’s concurrence. No party before us argued Justice O’Connor’s dicta about “legitimate criminal-justice” interests should control. Indeed, the concurrence has never been used to invalidate a guilty-plea waiver. This should come as no surprise, as Rum-ery is not even about guilty pleas.
In Rumery, the Supreme Court assessed the acceptability of a “release-dismissal agreement”—an agreement where a defendant releases his right to bring a lawsuit under 42 U.S.C. § 1983 in exchange for the dismissal of charges against him. Rumery, 480 U.S. at 393-97, 107 S.Ct. 1187. Release-dismissal agreements, as both the plurality and Justice O’Connor recognized, are not equivalent to guilty pleas. The “judicial oversight” inherent to entering a guilty plea separates the two, and gives the guilty plea an “important check against abuse” lacking in release-dismissal agreements. See id. at 393, 107 S.Ct. 1187 n.3 (majority opinion); id. at 400, 107 S.Ct. 1187 (O’Connor, J., concurring); see also Cady v. Arenac Cty., 574 F.3d 334, 348 (6th Cir. 2009) (Martin, J., concurring) (“Release-dismissals are not like plea bargains: the justification for plea bargains focuses on the prosecutor’s duties with respect to his limited institutional role and his concern for often limited prosecu-torial resources. Release-dismissals, by contrast, concern only whether the defendant may sue the officers who apprehended him for constitutional violations ... or some extant third-parties in civil court .... ”).
Importantly, Rumery acknowledged that the “public interest” in a guilty plea is the entered plea itself. A knowing, voluntary, and intelligent guilty plea assures the public that the crime will be punished and the prosecutor has a factual basis for his charges. See 480 U.S. at 393 n.3, 107 S.Ct. 1187 (majority opinion). The “public interest” in a release-dismissal agreement is more tangential. This contrast led Justice O’Connor to conclude that, in the distinct context of release-dismissal agreements, the public interest demands that the court “[c]lose[ly] examin[e] ... all the factors” affecting a particular agreement. See id. at 402, 107 S.Ct. 1187 (O’Connor, J., concurring). The Rumery Court’s reference to “legitimate prosecutorial and public interests,” id. at 397, 107 S.Ct. 1187, cited by the Court to bolster its reliance on Justice O’Connor’s concurrence, see Op. 681, is also specifically tied to the distinct question of whether release-dismissal agreements are generally invalid. See 480 U.S. at 397, 107 S.Ct. 1187 (“Because release-dismissal agreements may further legitimate prosecutorial and public interests, we reject the Court of Appeals’ holding that all such agreements are invalid per se.”). Neither Justice O’Connor’s concurrence, the Rumery majority opinion, nor the plurality opinion suggest a case-by-case inquiry into the public interest is similarly required regarding guilty-plea waivers.
The Court takes one sentence of Justice O’Connor’s concurring opinion and turns it into a rule. “[T]he prosecutor is permitted to consider only legitimate criminal justice concerns in striking his [plea] bargain— concerns such as rehabilitation, allocation of criminal justice resources, the strength of the evidence against the defendant, and the extent of his cooperation with the authorities.” Id. at 401, 107 S.Ct. 1187 (O’Connor, J., concurring (emphasis added)). This sentence is dicta within dicta; Justice O’Connor’s concurring views about what a prosecutor may consider when striking a plea bargain are raised solely as part of a contrast with the release-dismiss *686 al agreement at issue in Rumery. This sentence cites no authority. It is illustrative, not definitive, toward what “criminal justice concerns” are “legitimate.” It sets forth no basis to conclude that every waiver within a guilty plea must achieve a specific criminal justice interest, or any basis to evaluate whether any waiver does so. And, the plurality opinion dispels any suggestion that a court need consider public interest concerns beyond a plea’s volun-tariness. See 480 U.S. at 395, 107 S.Ct. 1187 (plurality opinion) (“Thus, we hesitate to elevate more diffused public interests above Rumery’s considered decision that he would benefit personally from the agreement.”).
The Court displays considerable impudence by chiding the Government for failing to brief a “legitimate-criminal justice” interest behind Price’s FOIA waiver. See Op. 681-82. Why would any litigant brief a standard never applied to guilty-plea waivers, and one that no party sought to apply? Indeed, at oral argument, amicus counsel repeatedly acknowledged that the type of FOIA waiver in Price’s guilty plea satisfied any “legitimate criminal-justice” interest. Oral Arg. Rec. at 12:18 - 12:22 (“We agree that there is a nexus between FOIA waivers and the criminal process”); id. at 11:34 - 11:39 (“We’re not saying that FOIA waivers don’t have a sufficient nexus to the criminal process”). Amicus counsel went farther, disclaiming any relevancy to Justice O’Connor’s analysis:
Justice O’Connor’s concurring opinion in Rumery was about whether the waiver in a plea deal has a,sufficient nexus to the criminal process. We’re not saying that FOIA waivers don’t have a sufficient nexus to the criminal process. The argument I’m making with the no limiting principle point is that it doesn’t stop the government from extracting waivers in non-criminal contexts. And, whether there is a nexus there or not is irrelevant to Rumery’s analysis.
See id. 11:26 - 11:52 (emphasis added). More significantly, when the Court introduced this issue at oral argument, Government counsel identified multiple “legitimate criminal-justice” objectives served by FOIA waivers—including the safeguarding of both scarce investigative resources and information within FOIA material that an inmate could use to harm victims or third-parties.[1] See, e.g., id. at 14:38 - 14:43. The Court dismissed these concerns as mere make-weight (even as Price’s ex-wife informed on him and she is the subject of his FOIA requests)[2] while, at the same time, never articulating a “legitimate criminal-justice” metric.
The Justice Department has long been concerned about cascading FOIA requests. See, e.g., Dep’t of Justice, Office of Information Policy, Surrogate FOIA Requests Increasing, VII FOIA Update No. 1 (Jan. 1, 1986), https://www.justice.gov/oip/blog/ foia-update-surrogate-foia-requests- *687 increasing (identifying “surrogate” FOIA requests from prisoners on behalf of other prisoners, resulting, in some cases, in “hundreds of FOIA requests on behalf of other persons to various federal law enforcement agencies” that then produce FOIA lawsuits). In the distinct release-dismissal context, where Justice O’Con-nor’s Rumery concurrence has actually applied, a general interest in efficiently “allo-catfing] ... criminal justice resources” and in “aid[ing] in the disposition of [the prosecutor’s] heavy case load” “would probably suffice” as public interests justifying a prosecutor in seeking a defendant waive his right to bring a civil-rights lawsuit. See, e.g., Coughlen v. Coots, 5 F.3d 970, 975 (6th Cir. 1993). The Court’s opinion leaves us with a bizarre conclusion: Efficiently allocating criminal justice resources and not adding the possibility of open-ended civil litigation to the prosecutor’s docket could justify a prosecutor in seeking a release-dismissal agreement—an agreement that a prosecutor has less discretion to enter into than a guilty plea. Those same interests, however, “leave us to guess” whether a prosecutor ever has a “legitimate criminal-justice” interest in seeking a defendant’s waiver of his right to FOIA materials relating to his conviction and the underlying investigation.[3] See Op. 681-82.
More fundamentally, nothing in the Supreme Court’s guilty-plea-waiver jurisprudence—before or after Rumery—supports using Justice O’Connor’s formulation to assess guilty pleas. In the release-dismissal context, Justice O’Connor’s assessment of “the relevant public interests” is considered “[t]he least-well defined element of a Rumery analysis.” Coughlen, 5 F.3d at 975. By importing it into a separate context, the Court’s opinion only compounds the confusion. To be sure, supplanting the Supreme Court’s standards with Justice O’Connor’s is not unprecedented. See, e.g., Planned Parenthood of Se. Pa. v. Casey, 505 U.S. 833, 985, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992) (Scalia, J., dissenting). But transmuting the High Court’s precedent—if it is to be done at all—is not in our job description.
II.
Because plea bargains are central to the functioning of the criminal justice system, achieving a guilty plea is the legitimate criminal justice interest behind a waiver that induces a bargain. See, e.g., Rumery, 480 U.S. at 393 n.3, 107 S.Ct. 1187 (majority opinion) (“[WJhen the State enters a plea bargain with a criminal defendant, it receives immediate and tangible benefits, such as promptly imposed punishment without the expenditure of prosecutorial resources. Also, the defendant’s agreement to plead to some crime tends to ensure some satisfaction of the public’s interest in the prosecution of crime and confirms that the prosecutor’s charges have a basis in *688 fact.”); Santobello v. New York, 404 U.S. 257, 260, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971) (characterizing plea bargaining as “an essential component of the administration of justice. Properly administered, it is to be encouraged. If every criminal charge were subjected to a full-scale trial, the States and the Federal Government would need to multiply by many times the number of judges and court facilities.”). To be sure, courts “presuppose fairness” in plea negotiations. Id. at 261, 92 S.Ct. 495. But “fairness” in bargaining has never required the Government to set forth its reasons for pursuing each and every waiver from a particular defendant. Nor has “fairness” ever permitted a defendant to collaterally attack a guilty-plea waiver on the ground that the Government failed to identify a “legitimate criminal-justice” interest before the plea was accepted.
In summarizing the principles articulated at the ’ start of the Supreme Court’s modern guilty-plea-waiver jurisprudence, the Court said the following:
[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea ....
Tollett v. Henderson, 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973).
If today’s reasoning applied to Tollett, achieving a guilty plea is a “legitimate criminal-justice” interest that can justify waiving the right to challenge unconstitutional conduct antecedent to the plea—but the same achievement is not a “legitimate criminal-justice” interest that can justify a limited FOIA waiver. This is implausible. If the interest in securing a guilty plea is sufficiently “legitimate” to sanction a blind eye toward constitutional violations, it must be sufficiently “legitimate” to allow Price to waive his FOIA right to records pertaining to his prosecution and the underlying criminal investigation. Prohibiting Price from burdening the Government with having to rifle through such records after he has knowingly, voluntarily, and intelligently pled guilty serves the same finality interest as waiving one’s right to challenge any unconstitutional, antecedent Government conduct. By pleading guilty, Price has forgone the opportunity to put the Government to its proof by being presumed innocent, confronting accusers, or putting on his own evidence. Waiving his FOIA right to records pertaining to his prosecution and the underlying investigation is as sensible as waiving all of the other tools by which Price could have challenged the Government’s prosecution.
The judiciary’s permissive attitude toward the content of a plea bargain only makes sense if no “legitimate criminal-justice” interest need be satisfied beyond securing a knowing, voluntary, and intelligent admission of guilt. “[T]he negotiation of a plea bargain is an act within a prosecutor’s jurisdiction as a judicial officer,” Doe v. Phillips, 81 F.3d 1204, 1210 (2d Cir. 1996), and, accordingly, “[t]he court must not participate in [plea agreement] discussions,” Fed. R. Crim. P. 11(c)(1). The Supreme Court has approved of prosecutors “inducting] a guilty plea” by overcharging defendants, either in the original indictment or by “threaten[ing] to bring additional charges during plea negotiationfs].” See United States v. Goodwin, 457 U.S. 368, 378 n.10, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982) (explaining Bordenkircher v. Hayes, 434 U.S. 357, 360-65, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978)); id. at 378, 102 *689 S.Ct. 2485 (“The outcome in Bordenkircher was mandated by this Court’s acceptance of plea negotiation as a legitimate process.”); see also Mabry v. Johnson, 467 U.S. 504, 508, 104 S.Ct. 2543, 81 L.Ed.2d 487 (1984). A prosecutor’s interest in securing a guilty plea justifies withholding “material impeachment evidence prior to entering a plea agreement.” United States v. Ruiz, 536 U.S. 622, 633, 122 S.Ct. 2450, 153 L.Ed.2d 586 (2002). Inducing a guilty plea is an interest of such importance to the criminal justice system that a plea may be secured without ensuring a defendant “correctly assessed] every relevant factor entering into his decision” to plead guilty. Brady v. United States, 397 U.S. 742, 757, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970).[4]
While anyone is free to disapprove of these tactics,[5] or plea bargaining in general, our job as judges is to apply the lawns it stands. When overcharging defendants, withholding material information, and permitting defendants to misperceive the evidence against them are all acceptable means to achieve the “legitimate criminal-justice” objective of a knowing, voluntary, and intelligent guilty plea, it makes no sense to insist limited FOIA waivers require satisfying an additional “legitimate criminal-justice” interest.
Inducing Price to waive his FOIA right to records pertaining to his prosecution and its underlying investigation achieved a knowing, voluntary, and intelligent guilty plea. This is undisputed. Accordingly, “we [should] hesitate to elevate more diffused public interests above [Pricejs considered decision that he would benefit personally from the agreement.” See Rumery, 480 U.S. at 395, 107 S.Ct. 1187 (plurality opinion).
Of course, as has been remarked in other contexts, “a federal court is more than a ‘recorder of contracts’ from whom the parties can purchase [relief].’ ” Local Number 93, Int’l Ass’n of Firefighters v. Cleveland, 478 U.S. 501, 525, 106 S.Ct. 3063, 92 L.Ed.2d 405 (1986); cf Keepseagle v. Per-due, 856 F.3d 1039, 1065-66 (D.C. Cir. 2017) (Brown, J., dissenting). The “structural protections” provided by the criminal justice system cannot be circumvented simply by a defendant agreeing to waive them. See Peretz v. United States, 501 U.S. 923, 937, 111 S.Ct. 2661, 115 L.Ed.2d 808 (1991); see also United States v. Mezzanatto, 513 U.S. 196, 204, 115 S.Ct. 797, 130 L.Ed.2d 697 (1995); cf United States v. Josefik, 753 F.2d 585, 588 (7th Cir. 1985) (“[I]f the parties stipulated to trial by 12 orangutans the defendant’s conviction would be invalid notwithstanding his consent, because some minimum of civilized procedure is required by community feeling regardless of what the defendant wants or is willing to accept.”).
When the nature of the right at issue is one that, if waived, would put the justice system’s integrity at stake, no waiver—not *690 even a knowing, voluntary, and intelligent one—is acceptable. With this principle in mind, we have previously said that a waiver will not be enforced if, “in agreeing to the waiver,” the defendant received ineffective assistance of counsel, or “if the sentencing court’s failure in some material way to follow a prescribed sentencing procedure results in a miscarriage of justice,” or if the sentence rested “on some constitutionally impermissible factor.” United States v. Guillen, 561 F.3d 527, 530-31 (D.C. Cir. 2009). Similarly, the Supreme Court has prohibited prospective waiver under the Speedy Trial Act, see Zedner v. United States, 547 U.S. 489, 502-03 & n.5, 126 S.Ct. 1976, 164 L.Ed.2d 749 (2006), as well as waiving the right to be present within Federal Rule of Criminal Procedure 43, see Crosby v. United States, 506 U.S. 255, 259-62, 113 S.Ct. 748, 122 L.Ed.2d 25 (1993). But, when a right does not implicate the structural protections of the criminal justice system, it is susceptible to waiver—and the waiver will be upheld if it is knowing, voluntary, and intelligent. Cf. Guillen, 561 F.3d at 530 (explaining why the right to appeal one’s sentence may be waived; “his waiver relieves neither his attorney nor the district court of their obligations to satisfy applicable constitutional requirements”).
Applying this principle here, Price’s FOIA waiver does not threaten the legitimacy of the criminal justice system. He had the benefit of the criminal discovery process, received (and approved) a detailed factual recitation within his guilty plea, and he retains the right to FOIA materials outside the investigation and prosecution of his case. Though Price’s public policy arguments against FOIA waivers make much of FOIA’s allegedly helpful role in identifying prosecutorial misconduct,[6] it is hard to believe a miscarriage of justice could be so subtle that only a FOIA request—one still subject to that statute’s nine disclosure exceptions, mind you— would reveal it. Nothing about the criminal justice system’s structural integrity is risked by this limited waiver of Price’s FOIA rights.
III.
Today’s opinion will not be cabined by the majority’s insistence that this is a “FOIA suit.” Nor will the ban on FOIA waivers only apply to the public policy harms Price has identified and “[tjhat’s it.” Op. 683. The analytical framework adopted in place of traditional waiver analysis is too tempting to ignore. Every criminal defense lawyer worth his salt will wonder why the Government should not be tasked' with showing a “legitimate criminal-justice” interest served with each and every right waived by a guilty plea. This will overhaul the plea process.
Federal Rule of Criminal Procedure 11 requires courts to “consider ... the public interest” before accepting nolo contendere pleas—not guilty pleas. See FED. R. CRIM. P. 11(a)(3). This makes sense, as no admission of guilt is secured in a nolo contendere plea while the defendant is still *691-709 subjected to a conviction. Whereas, when a defendant knowingly, voluntarily, and intelligently admits his guilt under oath, the public interest in convicting the actually guilty is secured. But after today, Rule ll’s sensible refusal to impose the same, case-by-case, “public interest” analysis of guilty pleas will no longer govern. Now, the “public interest” will be specifically addressed by considering the “legitimate' criminal-justice” interest behind each and every waiver. This will turn the Rule 11 colloquy into a conference where the Government, not the defendant, takes center stage. But see Fed. R. Crim. P. 11(b) (setting forth the colloquy as an exchange between the court and the defendant regarding material aspects of the plea). Of course, defendants will want to rebut the Government’s asserted interests. But how could a meaningful rebuttal occur without discovery? So much for Rule ll’s command that “[t]he court must not participate in [plea agreement] discussions.” Fed. R. Crim- P. 11(c)(1). Instead, courts will be asked to facilitate information-sharing on why the Government sought certain waivers. Far from keeping the wheels of justice turning, today’s decision ensures guilty pleas will bring the system to a screeching halt. And for what? For any of the rights our Founders deemed so essential that the Constitution of the United States was conditioned upon their explicit inclusion within the Bill of Rights? No—for a ‘60’s-era statutory right that often results in the Government releasing more black-Sharpie ink than records disclosing investigative information. I respectfully dissent.

. Government counsel also suggested a further "legitimate criminal-justice” interest: in-centivizing a litigant to use the discovery process if he has questions about the Government’s case against him, rather than plead first and ask ceaseless questions later. Cf. Antonin Scalia, The Freedom of Infonnation Act Has No Clothes, REGULATION, 19 (Mar.-Apr. 1982) https://object.cato.org/sites/ cato.org/files/serials/files/regulation/1982/3/v6 n2-3.pdf ("Requests by a litigant for judicially compelled production of documents from the opposing party’s files ... can be kept within reasonable bounds by the court itself. But when the government is the adversary, there no longer is any need to use the judicial discovery mechanism. A[] FOIA request can be as wide as the great outdoors.”).

. Price’s ex-wife did effectuate a waiver of her privacy rights, though she may have done so to keep the peace with Price—confident he could not obtain her records. The Court’s opinion snatches that assurance away.

. On the subject of leaving us to guess, the Court's analysis asks us to presume its distinction with every other case that has ever addressed the acceptability of a guilty-plea FOIA waiver possesses a difference. See Op. 679 n.4. Nothing in the Court's analysis or in those opinions explain why those FOIA waivers are not susceptible to the same “legitimate criminal-justice” attack levied against Price’s. Perhaps the Court is unbothered by staking out a position in contrast with district courts outside our circuit and an unpublished decision of a sister circuit. But when we start abrogating, sub silentio, the rulings of our circuit's district court, see, e.g., Scholl v. Various Agencies of the Federal Government, No. 14-cv-1003, 2016 WL 5313202, 2016 U.S. Dist. LEXIS 129421 (D.D.C. Sept. 22, 2016); Thyer v. U.S. Dep’t of Justice, No. 12-cv-0606, 2013 WL 140244, 2013 U.S. Dist. LEXIS 4400 (D.D.C. Jan. 11, 2013); Caston v. Exec. Office of U.S. Attorney's, 572 F.Supp.2d 125 (D.D.C. 2008), comity counsels clarity.

. The Court is troubled by the prospect that a defendant's plea bargain could waive his entitlement to Social Security payments. See Op. 682-83. But the Ninth Circuit upheld a plea agreement even when the defendant was unaware that, by pleading guilty to the offense, he became ineligible for food stamps and Social Security benefits. See United States v. Littlejohn, 224 F.3d 960, 970-71 (9th Cir. 2000).

. By identifying off-putting ways in which a prosecutor may pursue a guilty plea, I intend no disparagement of the role of the prosecutor. Many may look askance at the demands placed on both prosecutors and defense counsel to ensure the criminal justice system’s integral components. Cf. United States v. Wade, 388 U.S. 218, 257-58, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) (White, Harlan, & Stewart, JJ., concurring in part, dissenting in part) (explaining that the central role of adversary presentation within our justice system "countenance[s] or require[s] conduct [of defense counsel] which in many instances has little, if any, relation to the search for truth”).

. The Court belabors FOIA's alleged help in identifying Brady violations. But, at least two circuits have suggested a guilty plea may not be invalidated even when the prosecutor fails to disclose exculpatory evidence at the guilty-plea stage. See, e.g., United States v. Moussaoui, 591 F.3d 263, 285-86 (4th Cir. 2010) (declining, however, to resolve the question); Matthew v. Johnson, 201 F.3d 353, 361 (5th Cir. 2000) ("The Brady rule’s focus on protecting the integrity of trials suggests that where no trial is to occur, there may be no constitutional violation.”). To be sure, the great weight of the circuits do not accept this suggestion. See, e.g., United States v. Nelson, 979 F.Supp.2d 123, 129 (D.D.C. 2013) (collecting cases). But no court rejecting this suggestion—let alone the courts embracing it— rely on Justice O’Connor’s "legitimate criminal-justice” interest language.