

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| EX PARTE: | § | No. 08-22-00179-CR |
| JAMES EDWARD HILLIARD. | § | Appeal from the |
| | § | 210th Judicial District Court |
| | § | of El Paso County, Texas |
| | § | (TC# 20190D00815 and 20220D02996) |

**O P I N I O N**

Appellant, James Edward Hilliard, appeals the trial court's order jointly denying his amended application for a pretrial writ of habeas corpus and his motion to dismiss based on claims of double jeopardy and prosecutorial vindictiveness, respectively. On appeal, Hilliard contends the trial court abused its discretion by denying his claim for relief. Finding no error, we affirm.

## I. BACKGROUND

On February 27, 2019, the State charged Hilliard by indictment with one count of indecency with a child by sexual contact in cause number 20190D00815. A jury trial was originally scheduled for February 14, 2020. But Hilliard filed a motion for continuance to investigate and pursue discovery, which the trial court granted. The jury trial was reset, on special setting, for March 17 and 18, 2022. Days before, however, the State moved for a continuance due to its

complaining witness and others being out of town and unavailable for trial. The State informed the trial court that defense counsel indicated they were ready to proceed on the specially set dates. The trial court granted the State a continuance. Trial was reset for special setting jury trial on May 5 and 6, 2022, with backup dates on May 19 and 20, 2022. The State next filed a second motion for continuance on May 2, 2022. The State asserted as grounds that it had only recently learned of new facts from its complaining witness, identified in the motion as J.C., and such information led to paternity testing of J.C.'s first child.[1] The State asserted the testing could hinder the outcome of the proceeding for both the State and the defense. The trial court denied the State's motion.

Trial began on May 9, 2022. Prior to trial, the trial court had granted in part Hilliard's motion in limine as to evidence described in the State's notice of extraneous offenses and its notice of statements alleging conduct not otherwise alleged in the indictment. As its first witness, the State presented testimony from O.A.W.[2], its complaining witness, who was then 37 years old. She described that she lived in El Paso until she was roughly eight years old. Before moving from the city, she recalled she had first lived at her grandmother's house, then at an apartment where her mother frequently re-decorated her bedroom, and finally they moved into a ranch-style home. She testified that her mother died when she was 12 years old. She never knew her biological father. She described that she was raised by Hilliard, who was her stepfather. He was the only father figure of her childhood. She identified him in the courtroom.

---

[1] At the hearing, the State argued to the trial court that J.C. was considered a second complainant who could add credibility to the complainant named in the indictment. Defense counsel objected arguing the second witness was not relevant to the case given she would not be called as a witness in the case.

[2] Because the complaining witness was a minor at the time the offense was committed, we use her initials, for privacy protection. *See* TEX. R. APP. P. 9.10(a)(3).

The prosecutor asked O.A.W. about her memories of when she lived in the apartment in El Paso. For the most part, she recalled that she loved books and Barbies. She spent most of her time with her mother. When asked about things she did with her stepfather, O.A.W. said she tried to limit her time with Hilliard. When asked why, she said, "So we -- my dad would do this thing called cleaning, essentially." She remembered it became an issue of when she went to the bathroom by herself, he would claim that she had not properly wiped herself and he would check her underwear. The State followed her testimony asking her at what age she was when this circumstance occurred. O.A.W. testified she was five or six. Hilliard then objected on the basis that her testimony fell outside the date range of the indictment. The trial court overruled Hilliard's objection and his request for a mistrial. As O.A.W.'s testimony continued she provided details about what Hilliard would do to her. When she exited the restroom, he led her to her bedroom or, in some instances, the living room. He asked her to bring with her a roll of toilet paper and baby oil. After he removed her underwear, he would bend her over the middle of her bed, face down. Hilliard then rubbed the baby oil in between her butt cheeks, took out his penis, and rubbed it up and down where he had applied baby oil. O.A.W. said she felt the pressure of him pushing his penis up and down and he would try to insert it into her butt.

Hilliard objected again and moved for a mistrial. At a bench conference, Hilliard argued that O.A.W.'s testimony clearly described an extraneous offense, and not conduct alleged by the indictment. The State disagreed, arguing no violation of the in-limine order had occurred, that the witness's mention of penetration was not intentionally elicited by the State, and that the extraneous offense was admissible as part of the same criminal episode. After hearing argument outside the presence of the jury, the trial court granted Hilliard's motion for mistrial without prejudice. The

trial court noted the State's notice of extraneous offenses had expressly stated there were no allegations of penetration or ejaculation.

On August 17, 2022, the State filed a notice to vacate its prior notice of extraneous offenses, bad acts, and habitual offense, which had been filed on February 6, 2020. The following day, in cause number 20220D02996, the State reindicted Hilliard on eight felony counts of aggravated sexual assault of a child. Hilliard next filed a pretrial application for writ of habeas corpus alleging he had already been prosecuted under the prior indictment and the Double-Jeopardy Clause of the 5th Amendment of the United States Constitution, through the 14th Amendment of the United States Constitution, prohibited a re-prosecution. Within his writ application, Hilliard also asserted a claim of intentional prosecutorial misconduct.

In cause number 20190D00815, the State moved to dismiss the indecency with a child by sexual contact indictment based on the case having been refiled under cause number 20220D02996. Next, Hilliard separately filed both a motion to dismiss cause number 20220D02996, and an amended application for writ of habeas corpus. The motion to dismiss was based on prosecutorial vindictiveness, while the amended writ application was based on violations of the Double Jeopardy Clause of the United States and Texas Constitution. Yet, in either event, Hilliard's amended writ application incorporated by reference his motion to dismiss the pending indictment. After holding a non-evidentiary hearing on both of Hilliard's requests, the trial court jointly denied relief by written order.

Hilliard challenges the trial court's order denying the relief requested in his amended writ application.

## II. DISCUSSION

In his sole issue presented, Hilliard contends the trial court erred by denying his pretrial writ claims of double jeopardy and prosecutorial vindictiveness. He contends the indictment should be dismissed with prejudice. Countering, the State argues both pretrial writ claims lack merit.

### A. Standard of review

"Pretrial habeas, followed by an interlocutory appeal, is an extraordinary remedy." *Ex parte Ingram*, 533 S.W.3d 887, 891 (Tex. Crim. App. 2017). "[W]hether a claim is even cognizable on pretrial habeas is a threshold issue that should be addressed before the merits of the claim may be resolved." *Ex parte Ellis*, 309 S.W.3d 71, 79 (Tex. Crim. App. 2010). A defendant may use a pretrial application for writ of habeas corpus only in very limited circumstances. *Ex parte Smith*, 178 S.W.3d 797, 801 n.13 (Tex. Crim. App. 2005). The Court of Criminal Appeals has limited the use of pretrial habeas applications to issues that would result in immediate release and has "held that an applicant may use pretrial writs to assert his or her constitutional protections with respect to double jeopardy and bail," to challenge the facial constitutionality of the statute under which he or she is prosecuted, or to allege that the offense charged is barred by statute of limitations. *See Ex parte Weise*, 55 S.W.3d 617, 619 (Tex. Crim. App. 2001). The Court has "held that an applicant may not use a pretrial writ to assert his or her constitutional rights to a speedy trial, challenge a denial of a pretrial motion to suppress, or make a collateral estoppel claim that does not allege a double jeopardy violation" because those issues are better addressed by a post-conviction appeal. *Id.*

In limited circumstances, a trial court may dismiss a case without the State's consent. The Court of Criminal Appeals of Texas recognized that such authority exists "when a defendant has

been denied a right to a speedy trial, when there is a defect in the charging instrument, or pursuant to [Article 32.01 of the Texas Code of Criminal Procedure], when a defendant is detained[,] and no charging instrument is properly presented." *State v. Mungia*, 119 S.W.3d 814, 816 (Tex. Crim. App. 2003). We review a claim of prosecutorial vindictiveness for an abuse of discretion. *Wilson v. State*, 633 S.W.2d 952, 956-57 (Tex. App. 1982). And the same standard applies when reviewing a trial court's ruling on a claim for habeas relief. *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006). In both circumstances, we review the evidence presented in the light most favorable to the trial court's ruling. *Id*. We afford almost total deference to the court's determination of historical facts supported by the record, especially when the fact findings are based upon credibility and demeanor. *See Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997) (en banc). We also afford the same deference to the trial judge's rulings on application of law to fact questions if resolving those ultimate questions turn on evaluating credibility and demeanor. *Id*. If resolving those ultimate questions turns on applying legal standards, however, we review the determination de novo. *Id*. at 87.

Because no testimony was received at the trial court's hearing on Hilliard's motion to dismiss and application for writ of habeas corpus relief, we note the trial court's ruling could not have turned on credibility and demeanor of witnesses. *Ex parte Martin*, 6 S.W.3d 524, 526 (Tex. Crim. App. 1999) (en banc). Accordingly, we apply a de novo standard of review.

**B.  Analysis**

Hilliard argues three grounds in support of his appeal. First, he contends the State filed continuances to prevent Hilliard from exercising his constitutional right to a speedy trial. Second, Hilliard contends the State purposefully goaded him into moving for a mistrial evidenced by its

justifications for violating the court's in limine order. Lastly, Hilliard contends the State punished him for exercising his right to a jury trial by increasing the charges.

Hilliard's first and third arguments both fall under the prosecutorial vindictiveness complaint. Accordingly, we address those arguments together under our vindictiveness review. However, as to his argument asserting he was forced to protect his rights to a fair trial and motion for a mistrial, we interpret this complaint liberally as presenting a double jeopardy complaint against a retrial. We address this argument last, but only to a limited extent.

### (1) *Prosecutorial vindictiveness*

Hilliard asserts the State sought repeated delays of his constitutional right to a jury trial and, when its second motion for continuance was denied, it reindicted on eight counts of aggravated sexual assault of a child in retaliation. Hilliard contends the State increased the charges against him solely because he exercised his right to a fair trial. He asserts his claim raises a presumption of prosecutorial vindictiveness.

Habeas corpus relief on grounds of prosecutorial vindictiveness is not among the claims listed as cognizable in a pretrial habeas application by the Court of Criminal Appeals. *See Ex parte Estrada*, 573 S.W.3d 884, 891 (Tex. App.—Houston [1st Dist.] 2019, no pet.) (citing *Ex parte Weise*, 55 S.W.3d 617, 619 (Tex. Crim. App. 2001)). However, because an applicant may appeal a trial court's denial of habeas relief regardless of the underlying claims for the relief sought, we determine whether a vindictive-prosecution claim is cognizable in Hilliard's petition for pretrial habeas corpus. *Ex parte McCullough*, 966 S.W.2d 529, 531 (Tex. Crim. App. 1998) (en banc).

Generally, prosecutors have broad discretion to decide what charges to file against a criminal defendant. *Neal v. State*, 150 S.W.3d 169, 173 (Tex. Crim. App. 2004) (en banc). Yet, that discretion is not without limits. A prosecutor may *not* increase the charges brought against a

7

defendant simply as a punishment for invoking a right. *United States v. Saltzman*, 537 F.3d 353, 359 (5th Cir. 2008). "To punish a person because he has done what the law plainly allows him to do is a due process violation 'of the most basic sort.'" *United States v. Goodwin*, 457 U.S. 368, 372 (1982).

A constitutional claim of prosecutorial vindictiveness may be established in either of two distinct ways: (1) proof of circumstances that pose a "realistic likelihood" of such misconduct sufficient to raise a "presumption of prosecutorial vindictiveness," which the State must rebut or face dismissal of the charges; or (2) proof of "actual vindictiveness"—that is, direct evidence that the prosecutor's charging decision is an unjustifiable penalty resulting solely from the defendant's exercise of a protected legal right. *Neal*, 150 S.W.3d at 173. "Under the first prong, if the State pursues increased charges or an enhanced sentence after a defendant is convicted, exercises his legal right to appeal, and obtains a new trial, the Supreme Court has found a presumption of prosecutorial vindictiveness." *Id.* To establish the second prong, a defendant must prove with objective evidence, that the prosecutor's charging decision was a "direct and unjustifiable penalty" that resulted "solely from the defendant's exercise of a protected legal right." *Id.* at 174.

The presumption of vindictiveness prong rarely applies outside the context of a prior conviction, a successful appeal, and a post-appeal enhanced charging decision. See *Goodwin*, 457 U.S. at 373. The United States Supreme Court explained:

> There is good reason to be cautious before adopting an inflexible presumption of prosecutorial vindictiveness in a pretrial setting. In the course of preparing a case for trial, the prosecutor may uncover additional information that suggests a basis for further prosecution, or he simply may come to realize that information possessed by the State has a broader significance. At this stage of the proceedings, the prosecutor's assessment of the proper extent of prosecution may not have crystallized. In contrast, once a trial begins—and certainly by the time a conviction has been obtained—it is much more likely that the State has discovered and assessed all of the information against an accused and has made a determination,

8

> on the basis of that information, of the extent to which he should be prosecuted. Thus, a change in the charging decision made after an initial trial is completed is much more likely to be improperly motivated than is a pretrial decision.

*Id.* at 381. In the few instances it does apply, the defendant must prove he was convicted, he appealed and obtained a new trial, and that the State thereafter filed a greater charge or additional enhancements. *Neal*, 150 S.W.3d at 174. Such factors are not present here and the first vindictive prosecution claim is not satisfied. We decline to extend the presumption of prosecutorial vindictiveness in this case based on the record presented.

Under the second prong, Hilliard was required to prove, with objective evidence, that the prosecutor's charging decision was a "direct and unjustifiable penalty" that resulted "solely from the defendant's exercise of a protected legal right." *Id.* (quoting *Goodwin*, 457 U.S. at 384 n.19). Hilliard shoulders the burden of both production and persuasion, unaided by any legal presumption. *Id.* The trial court does the ultimate factual issue based upon the evidence and credibility determinations. *Id.* The State may stand mute unless and until Hilliard carries his burden of proof. *Id.*

Hilliard asserted the state increased charges against him solely because he exercised his lawful rights. In response, the State contended it reindicted the case because, after the mistrial, it had the complaining witness write down everything that had happened to her. The State considered her resulting statement as new evidence. After receiving the complaining witness's new statement, the State decided to reindict the case alleging actual penetration. The State further points out that Hilliard never filed a demand for speedy trial but instead requested a continuance at one point.

Based on this record, we cannot conclude the trial court clearly erred in finding the State did not engage in prosecutorial vindictiveness. We overrule Hilliard's sole issue in part to the extent it pertains to prosecutorial vindictiveness.

### (1) *The Double Jeopardy claim*

"The double jeopardy provisions of the federal and Texas constitutions protect a citizen from repeated attempts at prosecution for the same criminal offense." *Ex parte Wheeler*, 203 S.W.3d 317, 324 (Tex. Crim. App. 2006); *see also* U.S. CONST. amend. V; TEX. CONST. art. I, § 14. When a mistrial is granted at the defendant's request, double jeopardy principles generally do not bar a retrial. *Oregon v. Kennedy*, 456 U.S. 667, 673 (1982). However, when the defendant demonstrates that the prosecution engaged in conduct that was intended to provoke the defendant into moving for a mistrial, double jeopardy principles bar retrial. *Id.* at 679; *Ex parte Lewis*, 219 S.W.3d 335, 371 (Tex. Crim. App. 2007) (adopting the standard announced in *Oregon v. Kennedy* for determining when to grant double jeopardy relief following defense-requested mistrial).

An applicant for habeas corpus relief must prove his claim by a preponderance of the evidence. *State v. Guerrero*, 400 S.W.3d 576, 583 (Tex. Crim. App. 2013). In addition, an applicant must ensure that a sufficient record is presented to demonstrate error requiring reversal. *Ex parte Chandler*, 182 S.W.3d 350, 353 n.2 (Tex. Crim. App. 2005). To be entitled to habeas corpus relief on double jeopardy grounds, appellant was required to establish by a preponderance of the evidence that the prosecutor engaged in conduct that was intended to provoke him into moving for a mistrial. *See Kennedy*, 456 U.S. at 679. Texas courts analyze a federal or state constitutional double-jeopardy claim under a three-part test: (1) whether manifestly improper prosecutorial misconduct provoked the mistrial; (2) whether the mistrial was required because the prejudice produced from that misconduct could not be cured by an instruction to disregard; and (3) whether the prosecutor engaged in that conduct with the intent to goad the defendant into requesting a mistrial or with conscious disregard for a substantial risk that the trial court would be required to declare a mistrial. *Ex parte Wheeler*, 203 S.W.3d at 323. The Texas Court of Criminal

Appeals has held that courts should consider the following list of non-exclusive factors in assessing the prosecutor's state of mind:

1) Was the misconduct a reaction to abort a trial that was "going badly for the State?" In other words, at the time that the prosecutor acted, did it reasonably appear that the defendant would likely obtain an acquittal?

2) Was the misconduct repeated despite admonitions from the trial court?

3) Did the prosecutor provide a reasonable, "good faith" explanation for the conduct?

4) Was the conduct "clearly erroneous"?

5) Was there a legally or factually plausible basis for the conduct, despite its ultimate impropriety?

6) Were the prosecutor's actions leading up to the mistrial consistent with inadvertence, lack of judgment, or negligence, or were they consistent with intentional or reckless misconduct?

*Id.*

Within Hilliard's second argument, he asserts the State exhibited prosecutorial vindictiveness by purposefully goading him into moving for a mistrial. Whether a prosecution intentionally goaded a defense request for mistrial is included in the analysis of whether Hilliard established his entitlement to habeas corpus relief based on a double jeopardy violation. *See Ex parte Wheeler*, 203 S.W.3d at 324. Indeed, Hilliard's application for writ of habeas corpus included such a claim. However, his appellate brief on appeal neither mentions nor includes any argument challenging the trial court's rejection of such double jeopardy claim. Even if we were to interpret Hilliard's second argument liberally, his brief fails to develop an argument or cite to authority addressing a double-jeopardy analysis. *See* TEX. R. APP. P. 38.1(i) (requiring briefing to include concise argument for contentions made with appropriate citations to authorities and to the record). Similarly, Hilliard does not analyze the prosecutor's state of mind or show how the record

established by a preponderance of the evidence that the prosecutor engaged in conduct intended to provoke him into moving for a mistrial. *See Ex parte Wheeler*, 203 S.W.3d at 324. Based on both the record presented and briefing, we conclude the double-jeopardy portion of Hilliard's writ claim is without merit.

Thus, we overrule the remainder part of Hilliard's sole issue.

## III. CONCLUSION

We conclude the trial court did not abuse its discretion in denying Hilliard's amended application for a writ of habeas corpus, which was separately presented and incorporated in his motion to dismiss. We affirm the trial court's order.

GINA M. PALAFOX, Justice

July 21, 2023

Before Rodriguez, C.J., Palafox, and Soto, JJ.

(Do Not Publish)

12